```
1   Bryan Weir (#310964)
        bryan@consovoymccarthy.com
2   Thomas R. McCarthy (pro hac vice forthcoming)
        tom@consovoymccarthy.com
3   CONSOVOY MCCARTHY PLLC
    1600 Wilson Boulevard, Suite 700
4   Arlington, VA 22209
    (703) 243-9423
5

6   Patrick Strawbridge (pro hac vice forthcoming)
        patrick@consovoymccarthy.com
7   CONSOVOY MCCARTHY PLLC
    Ten Post Office Square
8   8th Floor South PMB #706
    Boston, Massachusetts 02109
9   (617) 227-0548

10

11  Bradley A. Benbrook (#177786)
        brad@benbrooklawgroup.com
12  BENBROOK LAW GROUP PC
    400 Capitol Mall, Suite 2530
13  Sacramento, CA 95814
    (916) 447-4900
14
```

*Counsel for Petitioners*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| VALERIA HERMOSILLO CHAVEZ, ERIK ESPARZA, JAMAR SMITH, and ANTHONY SIMONEAU, and 7,267 OTHER INDIVIDUALS. <br><br> Petitioners, <br><br> v. <br><br> UBER TECHNOLOGIES, INC.; and UBER USA, LLC, <br><br> Respondents. | Case Number: 3:21-cv-09577 <br><br> **PETITION FOR AN ORDER COMPELLING ARBITRATION** |

PETITION FOR AN ORDER COMPELLING ARBITRATION
CASE NO.: 3:21-cv-09577

Petitioners file this Petition for an Order Compelling Arbitration ("Petition") against Respondents Uber USA, LLC, and Uber Technologies, Inc. (collectively, "Uber"), as follows:

**NATURE OF THE PETITION**

1. Petitioners are 7,271 customers of the Uber service Uber Eats.

2. During the second half of 2020, Uber adopted and maintained a race-based, differential pricing scheme on Uber Eats whereby Uber did not charge its customers a delivery fee when they ordered from businesses identified as Black-owned, while at the same time penalizing its customers who ordered from non-Black-owned businesses by imposing delivery fees on them.

3. This overtly race-based policy of disparate treatment conferred causes of action on many of Uber's customers under the Civil Rights Act of 1866, 42 U.S.C. §1981, and California's Unruh Civil Rights Act, Cal. Civ. Code §§51-52. *See, e.g.*, *Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 175 (2007) (barring "price differential[s]" based on protected status).

4. Uber's arbitration agreement bars its customers from court and also bars them from proceeding on a class or collective basis.

5. Petitioners and more than 20,000 other individual consumers ("Claimants") thus brought their discrimination claims against Uber in the only way Uber permits them; each filed an individual demand with the American Arbitration Association ("AAA") in his or her own name and advancing only his or her own claims under Section 1981 and Unruh. Claimants filed those demands starting in October 2020.

6. AAA determined that all Claimants had satisfied their initial filing obligations and assessed Uber for filing fees that it owed under the Agreement.

7. After paying the filing fees, Uber objected to proceeding with the arbitrations on an individual basis—even though its arbitration agreement mandates individual arbitration.

8. Instead, Uber sought to impose collective-action procedures on the individual arbitrations—one of the very things Uber's arbitration agreement bars its customers from doing.

9. Relatedly, Uber urged AAA to depart from its published fee schedule, claiming that the collective procedures it sought warranted a reduction in the case-management fees and arbitrator fees that Uber had agreed to in its arbitration agreement.

PETITION FOR AN ORDER COMPELLING ARBITRATION
CASE NO.: 3:21-cv-09577

10. On April 2, 2021, AAA advised Claimants and Uber that it would divide the claimants into five batches—a first batch of 477 claimants followed by three 7,771-claimant batches and one 7,770-claimant batch. AAA further advised the parties that it would invoice Uber for the case management fees at AAA's long-posted rates—promptly for the first batch of 477 and then for the second batch after completing appointment of most of the arbitrators for the first batch.

11. At AAA's long-posted rates, that would amount to $667,800 in case management fees for the first batch (477 cases x $1,400/case) and $10,879,400 in case management fees for the second batch (7,771 cases x $1,400/case).

12. On May 13, 2021, Uber paid the case-management fees for the first batch, and those 477 cases proceeded into individual arbitration.

13. On September 14, 2021, when arbitrators had been confirmed for nearly all of the first 477 cases, AAA issued Uber an invoice and requested payment of the Case Management fees for the second batch of 7,771 cases in the amount of $10,879,000.

14. AAA's invoice specifically noted that "[a]s these arbitrations are subject to California Code of Civil Procedure 1281.97 and 1281.98, payment must be received within 60 days of the date of this letter. The AAA will not grant any extensions to this payment deadline."

15. On September 20, 2021, Uber fled arbitration for New York state court, filing suit against AAA seeking a preliminary injunction to renege on its promise to pay AAA's long-posted fees.

16. Several Claimants sought to intervene in the New York action to protect their rights. Uber objected, and intervention was denied. Plaintiffs are thus not a party to the New York proceedings.

17. In the New York action, Uber sought a preliminary injunction that would, among other things, prohibit AAA from requiring the payment of its invoice to proceed with the arbitrations.

18. In its filings, AAA repeatedly noted that it had no authority to alter the invoice and that the arbitration of the next 7,771 cases could not proceed unless the September 14 invoice was paid.

19. AAA also noted that California law required the invoice to be paid within 30 days of its due date, which would be October 14, 2021.

20. The New York trial court rejected Uber's request for a preliminary injunction, determining that Uber was unlikely to succeed on the merits of its challenges and could not demonstrate irreparable harm from the requirement that it pay AAA's invoice in full.

21. The invoice's due date of October 14, 2021 passed without payment.

22. Uber appealed that order to the New York Appellate Division and sought interim relief that would allow it to avoid paying the pending invoice.

23. On October 20, 2021, though the invoice due date had passed, the New York Appellate Division entered an interim order purporting to "extend[] the time for payment of the October 14th invoice until a determination by the full bench." The Appellate Division further ordered that Uber "pay[] to AAA $700,000 to cover the cost of arbitrator appointment."

24. Subsequent to that order, Uber tendered $700,000 to AAA, which accepted the payment on October 22. In confirming receipt, AAA informed the parties that "Uber's payment of $700,000 covers the Case Management Fees for 500 cases ($1,400 per case). Therefore, at this time the AAA will proceed with the further administration of 500 cases."

25. On December 2, 2021, the New York Appellate Division entered another order purporting to extend the October 14, 2021 invoice deadline "on the condition that [Uber] perfect the appeal for the March 2022 Term of this Court and upon the condition imposed by the Interim Order of a Justice of this Court dated October 20, 2021."

26. As of October 14, AAA had not received payment for the other 7,271 cases in the second batch and thus has not proceeded with those arbitrations.

27. Uber's ongoing attempts to avoid payment of the invoice thus have deprived Claimants of the ability to proceed with their arbitrations under the very terms that Uber itself selected and imposed on them.

28. Federal courts (including this one) have rejected similar attempts to evade arbitral fees and seek to resolve arbitral fee disputes in court instead of in arbitration. *See, e.g.*, *Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246 (N.D. Cal. 2019), *aff'd*, 823 F. App'x 535 (9th Cir. 2020).

29. Indeed, courts have enjoined parties to an arbitration agreement from pursuing actions in other jurisdictions, like Uber has here.

30. AAA's invoiced fees are subject to both Cal. Civ. Pro. §1281.97 and §1281.98. Cal. Civ. Pro. §1281.98(a) provides that a party who drafts a consumer arbitration agreement and then fails to pay "fees or costs required to continue the arbitration proceeding … is in material breach of the arbitration agreement [and] is in default of the arbitration."

31. Cal. Civ. Pro. §1281.98(b)(3) further provides that when "the drafting party materially breaches the arbitration agreement and is in default under subdivision (a)," the consumer may "[p]etition the court for an order compelling the drafting party to pay all arbitration fees that the drafting party is obligated to pay under the arbitration agreement or the rules of the arbitration company."

32. Petitioners therefore file this Petition to compel Uber to arbitrate the 7,271 cases filed by Petitioners under the terms of Uber's arbitration agreement and AAA Consumer Rules, and to pay the fees required for that arbitration to proceed.

33. Petitioners also request injunctive relief requiring Uber to withdraw the pending action in New York state court and cease any other efforts to avoid arbitration.

**PARTIES**

34. Petitioners are 7,271 Uber Eats customers who have filed individual consumer demands for arbitration against Uber with the AAA. Attached is a list of all Petitioners.

35. Uber Technologies, Inc., is a Delaware corporation headquartered in San Francisco, California.

36. Uber USA, LLC, is a Delaware limited liability company whose principal place of business is in San Francisco, California.

**JURISDICTION AND VENUE**

37. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1367 because the underlying controversy involves claims arising under federal law and state-law claims that arise from the same nucleus of operative facts as the federal claims.

38.     This Court has personal jurisdiction over Respondents because Respondents have their headquarters and principal place of business in California.

39.     Venue is proper in this district pursuant to 9 U.S.C. §4 and 28 U.S.C. §1391(b) because Respondents have their headquarters and principal place of business in San Francisco County, Respondents do business in this district, and a substantial part of the events or omissions complained of occurred in this district.

## INTRADISTRICT ASSIGNMENT

40.     This action is properly assigned to the San Francisco Division of this District, pursuant to Civil Local Rule 3-2(c) and (d), because a substantial part of the events or omissions that give rise to the claim occurred in San Francisco County, which is served by the San Francisco Division.

## FACTS

### Uber's Sweeping Arbitration Agreement

41.     Uber is an app- and web-based company that is worth approximately $84 billion. *See* UBER, Nasdaq Market Cap. (Aug. 16, 2021), bit.ly/2VTWgHw. It earns approximately $11 billion in annual revenue from about 100 million customers who regularly use its platforms. *See* Uber, *Uber Announces Results for Fourth Quarter and Full Year 2020* (Feb. 10, 2021), ubr.to/2UlBzmP; Uber, *Uber Announces Results for First Quarter 2021* (May 5, 2021), ubr.to/37RUtEU. One of those platforms is a service called Uber Eats, which allows customers to place food-delivery orders from restaurants.

42.     Uber, like other large corporations, requires all its United States customers who use its services, including its meal-delivery service Uber Eats, to agree to Uber's U.S. Terms of Use ("the Terms")—a standardized, adhesive contract drafted solely by Uber. A true and correct copy of the Arbitration Agreement is attached as Ex. A.

43.     At all relevant times, the Terms have contained a sweeping arbitration agreement requiring Uber customers "to resolve any claim that you may have against Uber on an individual basis in arbitration." *Id.* at 2.

44. More particularly, Uber forces its customers into arbitration for "any dispute, claim or controversy arising out of or relating to (a) these Terms or the existence, breach, termination, enforcement, interpretation or validity thereof, or (b) your access to or use of the Services at any time, whether before or after the date you agreed to the Terms." *Id.*

45. Uber specifically requires customers to "waiv[e] the right to a trial by jury or to participate as a plaintiff or class member in any purported class action or representative proceeding." *Id.*

46. Uber's arbitration agreement provides that "[t]he arbitration will be administered by the American Arbitration Association ('AAA') in accordance with the AAA's Consumer Arbitration Rules." *Id.* at 3. It expressly incorporates AAA's published fee schedule and provides that "[y]our responsibility to pay any AAA filing, administrative and arbitrator fees will be solely *as set forth in the AAA Rules*." *Id.* at 4 (emphasis added). And Uber expressly promises to absorb all these fees for any customer whose "claim for damages does not exceed $75,000." *Id.* AAA's Consumer Rules further explain that the business will pay a "Case Management Fee" or "$1,400" per case that "must be paid prior to the arbitrator appointment process" and at least "$1,500 per case" for "Arbitrator Compensation." A true and correct copy of AAA's Consumer Rules are attached as Ex. B.

47. Uber made this promise to assure its customers—and the courts and AAA—that its arbitration agreement is fair to customers and not unconscionable.

48. Uber routinely enforces its arbitration agreement against customers and, in doing so, uniformly relies on its promise to pay all AAA fees to justify forcing customers into individual arbitration. Uber repeatedly has argued that its arbitration agreement "safeguard[s] … access to the arbitral forum" and defeats "an unconscionability challenge" precisely because Uber agreed to pay "all" AAA "filing, administrative, and arbitrator fees." Uber Mot. to Compel, *Meyer v. Uber Techs., Inc.*, 2016 WL 3662485 (S.D.N.Y.); *see also, e.g.*, Uber Mot. to Compel, *Sabatino v. Uber Techs., Inc.*, 2015 WL 2160125 (N.D. Cal.).

**Petitioners File Discrimination Claims Against Uber in Individual Arbitration**

49. Between June 4 and December 31 of 2020, Uber openly adopted and implemented a race-based, differential-pricing scheme. Under that scheme, Uber viewed the businesses on its platform as two groups separated by a racial line. To Uber, businesses identified as Black-owned were on one side; and non-Black-owned businesses were on the other. Having distinguished these businesses by race, Uber charged no delivery fees to customers who ordered from Black-owned businesses while penalizing customers who ordered from non-Black-owned businesses by charging them delivery fees.[1]

50. Petitioners are customers who used the Uber Eats app during the relevant period and paid the discriminatory delivery fee. They assert that Uber's express race-based discrimination violated California's Unruh Civil Rights Act, Cal. Civ. Code §§51-52, and 42 U.S.C. §1981. *See, e.g.*, *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1050 (9th Cir. 2000) (Unruh bars "discrimination in the form of pricing differentials").

51. Because Uber's arbitration agreement allowed them to vindicate their claims only through individual arbitration, Petitioners filed arbitration demands with AAA between October and December of last year. On December 16, 2020, AAA advised the parties that Claimants met AAA's filing requirements and directed Uber to pay a total of $4,346,625 in filing fees by January 4, 2021 and February 4, 2021 (depending upon the filing date of the demand).

52. Uber paid the entire amount of filing fees early on December 24, 2020.

**Uber's Resistance to Its Own Arbitration Agreement**

53. After paying the filing fees, Uber balked at litigating these cases according to the rules of its own arbitration agreement.

---

[1] In May of 2021, Uber settled with the State of Arizona for claims under the Arizona Civil Rights Act arising out of that very discriminatory pricing regime. *See* Ariz. Att'y Gen., *Attorney General Brnovich Settles Race Discrimination Allegations with Uber, Postmates, DoorDash* (June 2, 2021), bit.ly/3yVeHcQ.

PETITION FOR AN ORDER COMPELLING ARBITRATION
CASE NO.: 3:21-cv-09577

54. Though Uber bars its customers from bringing collective actions, Uber itself promptly sought to impose collective-action procedures on these individual arbitrations and demanded a reduction in AAA's fees along with those procedural changes.

55. After AAA rejected Uber's demands to depart from the terms of Uber's arbitration agreement (and from AAA's Consumer Rules, which Uber had adopted in its agreement), Uber stooped to threatening AAA's staff and questioning its impartiality for applying AAA's published fee schedule according to its express terms. Uber further demanded that AAA's arbitrators not be fully compensated for their work in these cases.

56. AAA resisted Uber's threats, noted that Uber itself chose individual arbitration before AAA and AAA's Consumer Rules, and rejected Uber's attempts to alter the terms of its arbitration agreement.

57. On April 2, 2021, AAA advised Uber that it would divide the claimants into five batches—a first batch of 477 claimants followed by three 7,771-claimant batches and one 7,770-claimant batches. At AAA's posted rates, that would amount to $667,800 in case management fees for the first batch (477 cases x $1,400/case) and $10,879,400 in case management fees for the second batch (7,771 cases x $1,400/case).

58. AAA also advised Uber on April 2 that "[o]nce arbitrators are appointed to the first batch of 477 cases, we will … bill Case Management Fees for the next batch of 7,771 matters."

59. Uber thus knew as of April 2, 2021 precisely how case management fees would be billed in the AAA proceedings and the amounts of the coming invoices.

60. Uber paid $667,800 in case management fees for the first 477 arbitrations on May 13, 2021, and AAA began assigning arbitrators for those cases.

61. These 477 cases have been moving forward according to the terms of the Agreement. Indeed, while Uber initially demanded collective action procedures on the false premise that each case was part of a de facto class action, Uber has now changed its position and is litigating Claimants' cases as individual cases and, among other things, has taken the position that every single claimant must be subjected to individualized discovery.

62. On September 14, 2021, AAA notified the parties that it had invoiced Uber for case management fees for the next batch of Claimants, in the amount known since April 2—$10,879,400. A true and correct copy of the invoice is attached as Ex. C.

63. In accompanying correspondence, AAA made clear (once again) that the invoice was final and it would not reconsider its decision absent agreement of the parties. And AAA noted that "[a]s these arbitrations are subject to California Code of Civil Procedure 1281.97 and 1281.98, payment must be received within 60 days of the date of this letter. The AAA will not grant any extensions to this payment deadline." A true and correct copy of this correspondence is attached as Ex. D.

### Uber's Desperate Bid to Escape Arbitration

64. Six days later, on September 20, 2021, Uber filed a lawsuit in New York state court seeking to renege on its promise to pay AAA's long-posted fees. *See Uber Techs., Inc. v. Am. Arbitration Ass'n, Inc.*, No. 655549/2021 (N.Y. Sup. Ct.).

65. Specifically, Uber asked the New York court for a preliminary injunction to "extend[] the invoiced deadline" and "enjoin[] the AAA from issuing any additional invoices." Ex. E at 7-8. Though AAA simply applied its posted fee schedule in invoicing Uber, Uber claimed that it has a right to extensive internal financial information from AAA in order to determine whether AAA's case-management fees are reasonable. Ex. E at 16. Indeed, Uber seeks an "accounting" of "AAA's costs and expenses" incurred in relation to the fees invoiced. Ex. F at 3.

66. Uber's suit is entirely baseless. It violates the principle of arbitral immunity, ignores the very terms of the contract Uber itself drafted and imposed on Claimants, and violates the AAA's own rules—which Uber chose and incorporated into the parties' agreement—providing that "[n]either the AAA nor any arbitrator in a proceeding under these Rules is a necessary or proper party in judicial proceedings relating to the arbitration" and that "neither the AAA, AAA employees, nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules." AAA Consumer Rule R-49(b), (d). Ex. G.

67. Some of the Claimants in the underlying arbitrations sought to intervene in the New York proceedings to the protect those rights. Uber opposed intervention, and the trial court subsequently denied the motion. A true and correct copy of the order denying intervention is attached as Ex. H.

68. Following a multi-day evidentiary hearing, the New York trial court denied Uber's request for a preliminary injunction on October 14, 2021. The trial court concluded that Uber (1) failed to establish irreparable harm, since "Uber conceded that it has the ability to pay the invoice" and payment "will not cause Uber to be insolvent"; (2) Uber had not shown a likelihood of success on the merits, since Uber itself required Claimants "to arbitrate disputes," the AAA's rates for its services are "pursuant to a published fee schedule" which Uber "presumably" knew about, and Uber's suit was also likely to be barred by arbitral immunity, which protects AAA from suits challenging its fees and administration of the arbitrations; (3) the balance of the equities did not favor Uber because it "used its unequal bargaining power" to impose arbitration "as individualized cases, in accordance with the AAA's published rules"; and (4) to the extent Uber was concerned about the effect of California statutes imposing duties on companies that deployed arbitration agreements, the "court [was] not in any position to second-guess the wisdom of the California legislature in this area." A true and correct copy of the New York Supreme Court's order is attached as Ex. I.

69. Uber appealed the decision to the New York Appellate Division, First Department, on October 15, 2021. As part of its appeal, Uber sought interim relief.

70. On October 20, 2021, a single justice of the Appellate Division entered an interim order providing that Uber's request was "granted to the extent that the time for movant to pay the invoice with a due date of October 14th, 2021 is extended until a determination by the full bench, conditioned on movant paying to AAA $700,000 to cover the cost of arbitrator appointment." A true and correct copy of this order is attached as Ex. J.

71. Uber subsequently tendered $700,000 to AAA, which accepted the payment on October 22. In confirming receipt, AAA informed the parties that "Uber's payment of $700,000 covers the Case Management Fees for 500 cases ($1,400 per case). Therefore, at this time the AAA

will proceed with the further administration of 500 cases." A true and correct copy of that letter is attached as Ex. K.

72. AAA has almost completed appointing arbitrators to those 500 cases. Though AAA stands ready to continue arbitrator appointment for the remaining 7,271 cases, it will not do so until Uber pays AAA's published fees.

73. On December 2, 2021, the New York Appellate Division entered an order which did not address the merits of Uber's appeal but further granted interim relief to Uber "on the condition that [Uber] perfect the appeal for the March 2022 Term of this Court and upon the condition imposed by the Interim Order of a Justice of this Court dated October 20, 2021."

74. Despite losing on every issue before the trial court, Uber's appeal of its preliminary injunction will thus remain pending in the New York appellate courts well into 2022, further frustrating Petitioners' rights to arbitrate their cases that have already been pending for over a year.

75. Uber's ongoing attempts to avoid payment of the invoice thus have deprived Claimants of the ability to proceed with their arbitrations under the very terms that Uber itself selected and imposed on them.

76. Meanwhile, Uber has continued to try and delay resolution of the New York case, including adjudication of AAA's pending motion to dismiss in the New York trial court.

77. Due to Uber's ongoing and concerted efforts to avoid payment of the very fees that it incorporated into its adhesive arbitration agreement, thousands of Claimants are being deprived of their right to arbitration. And those Claimants have been denied the right to participate in Uber's ongoing efforts to obstruct these arbitrations—just as Uber intended all along when it filed suit in New York.

**Petitioners Seek a Return to Arbitration**

78. This Court should put an end to Uber's shenanigans. "The irony, in this case, is that the [customers] wish to enforce the very [restrictive arbitration] provisions forced on them by seeking, even if by the thousands, individual arbitrations, the remnant of procedural rights left to them. [But Uber], faced with having to actually honor its side of the bargain, now blanches at the

1 | cost of the filing fees it agreed to pay in the arbitration clause. … This hypocrisy [should] not be
2 | blessed." *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1067-68 (N.D. Cal. 2020).

3 |     79.    Indeed, this Court has already encountered several cases like this one where large corporations like Uber have imposed restrictive arbitration agreements and then hypocritically (and unlawfully) sought to close off arbitration by refusing to pay case management fees. *See id.*; *Adams*, 2019 WL 6694737, at *4 n.2. Each time the Court has compelled arbitration. *See id.* Other California courts have done the same. *See Postmates Inc. v. 10,356 Individuals*, 2020 WL 1908302 (C.D. Cal.); *see also Intuit Inc. v. 9,933 Individuals*, 2021 WL 3204816 (Cal. Ct. App.).

    80.    This Court should therefore use its authority under the FAA Section 4 to compel Uber to arbitrate according to the terms of the Agreement. *See, e.g.*, *Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 487 (5th Cir. 2002); *Folse v. Richard Wolf Med. Instruments Corp.*, 56 F.3d 603, 604-06 (5th Cir. 1995); *XO Commc'ns, Inc. v. Terra Telecomms. Corp.*, 333 F. Supp. 2d 494, 496 (E.D. Va. 2002). This Court has compelled parties to return to arbitration before, *Brunner v. Lyft, Inc.*, 2019 WL 6001945, at *1 (N.D. Cal.) (granting a motion to dismiss and compel a party to return to arbitration with Lyft); *Roderick v. Mazzetti & Assocs., Inc.*, 2004 WL 2554453, at *2, *12 (N.D. Cal.) (compelling parties to return to arbitration after one party filed a lawsuit during an ongoing arbitration), and for good reason. This Court should not tolerate a party to arbitration "[going] to court when disappointed by interim arbitration rulings, particularly in arbitration proceedings the party agreed to and before arbitrators it selected." *Sullivan v. Feldman*, 2021 WL 1517903, at *2 (S.D. Tex.). Such behavior is "antithetical to the purpose of arbitration." *Id.*

    81.    The Court should also issue injunctive relief in aid of its jurisdiction and to protect and effectuate its order compelling Uber to return to arbitration. *See, e.g.*, *A.L. Williams & Assocs., Inc. v. McMahon*, 697 F. Supp. 488, 494-95 (N.D. Ga. 1988). Under Supreme Court precedent, there is "a strong presumption" that district courts may issue these injunctions, *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 842 (9th Cir. 2017) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)), and accordingly, federal district courts have easily found jurisdiction to enjoin a party's pursuit of parallel state court actions that interfere with an

order compelling arbitration, *see, e.g.*, *Watermark Harvard Square, LLC v. Calvin*, 2018 WL 1166707, at *1, *9 (D. Colo.), *report and recommendation adopted*, 2018 WL 1952587 (D. Colo.); *A.L. Williams & Assocs.*, 697 F. Supp. at 495.

82. There is no doubt that Uber is refusing to arbitrate here. Claimants filed their demands over a year ago. Uber started delaying their adjudication for months while it badgered AAA to alter its rules. *See supra* ¶¶ 53-56. Then, after AAA issued an invoice in September and informed Uber that it must be paid by November 14, Uber refused to pay the posted fees required for AAA to assign arbitrators. As a result, 7,271 Claimants are currently being denied their right to arbitrate. The FAA was designed for just this type of scenario.

83. In addition, Cal. Civ. Pro. §1281.98(a) provides that a party who drafts a consumer arbitration agreement and then fails to pay "fees or costs required to continue the arbitration proceeding … is in material breach of the arbitration agreement [and] is in default of the arbitration."

84. Cal. Civ. Pro. §1281.98(b)(3) further provides that when "the drafting party materially breaches the arbitration agreement and is in default under subdivision (a)," the consumer may "[p]etition the court for an order compelling the drafting party to pay all arbitration fees that the drafting party is obligated to pay under the arbitration agreement or the rules of the arbitration company." Cal Civ. Pro §1281.99 provides for further relief in the event a company violates §1281.98.

85. AAA already has determined that Uber's failure to pay the invoice by November 14, 2021, would constitute a material breach under Cal. Civ. Pro. §1281.98. *See* Ex. D.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

86. Enter an order, pursuant to 9 U.S.C. §4, directing that Uber pay the required fees and take any other steps required by AAA to initiate arbitration of Petitioners' claims in the manner provided for by the Agreement;

87. Order Uber to withdraw its pending case in *Uber Techs., Inc. v. Am. Arbitration Ass'n, Inc.*, No. 655549/2021 (N.Y. Sup. Ct.) and refrain from any further attempts to avoid arbitration.

88. Declare Uber to be in material breach of its obligation to pay the required fees, as already determined by the AAA, and order Uber to pay arbitration fees as required by Cal. Civ. Pro. §1281.98(b)(3).

89. Award Petitioners relief under Cal. Civ. Pro. §1281.99, including attorney fees and costs and terminating sanctions. *See id.* §§1281.99(a)-(b).

90. Award such other and further relief as the Court deems just and proper.

Dated: December 10, 2021

Respectfully submitted,

 /s/ Bryan Weir 
Bryan Weir (#310964)
   bryan@consovoymccarthy.com
Thomas R. McCarthy (*pro hac vice forthcoming*)
   tom@consovoymccarthy.com
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423

Patrick Strawbridge (*pro hac vice forthcoming*)
   patrick@consovoymccarthy.com
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, Massachusetts 02109
(617) 227-0548

Bradley A. Benbrook (#177786)
   brad@benbrooklawgroup.com
BENBROOK LAW GROUP PC
400 Capitol Mall, Suite 2530
Sacramento, CA 95814
(916) 447-4900

*Counsel for Petitioner*

PETITION FOR AN ORDER COMPELLING ARBITRATION
CASE NO.: 3:21-cv-09577