Bryan Weir (#310964)
    bryan@consovoymccarthy.com
Thomas R. McCarthy (admitted *pro hac vice*)
    tom@consovoymccarthy.com
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423

Patrick Strawbridge (admitted *pro hac vice*)
    patrick@consovoymccarthy.com
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, Massachusetts 02109
(617) 227-0548

Bradley A. Benbrook (#177786)
    brad@benbrooklawgroup.com
BENBROOK LAW GROUP PC
701 University Avenue, Suite 106
Sacramento, CA 95825
(916) 447-4900

*Counsel for Petitioner*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| VALERIA HERMOSILLO CHAVEZ, ERIK ESPARZA, JAMAR SMITH, ANTHONY SIMONEAU, and 7,267 OTHER INDIVIDUALS,<br><br>Petitioners,<br><br>v.<br><br>UBER USA, LLC; and UBER TECHNOLOGIES, INC.,<br><br>Respondents. | Case Number: 3:21-cv-9577<br><br>**MOTION TO COMPEL ARBITRATION, TO STAY PARALLEL PROCEEDINGS, AND FOR OTHER RELIEF**<br><br>**Date:    March 10, 2022**<br>**Time:    1:30 p.m.**<br>**Courtroom 3** |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on Thursday, March 10, 2022, at 1:30 p.m., Petitioner will and hereby does move this Court, pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. §4, Fed. R. Civ. P. 65, and Cal. Civ. Pro. §1281.98 for an order requiring Respondents (collectively, "Uber") to return to arbitration and that they discontinue their ongoing litigation efforts in New York (or anywhere else) to avoid that arbitration.

Thousands of Claimants who simply seek to exercise their right to arbitrate under Uber's arbitration agreement are being prevented from doing so because Uber refuses to pay the fees that the American Arbitration Association ("AAA") has determined are due. AAA has already determined that the failure to pay these fees constitutes a material breach under California law, and the FAA and Cal. Civ. Pro. §1281.98 expressly provide a right to a court order to compel payment under these circumstances. They also authorize this Court to enjoin Uber from undertaking or continuing any further efforts to avoid arbitration, including its New York litigation. Because the Petitioners first sought arbitration in late 2020 and Uber's tactics have already delayed their cases by more than a year, Petitioner therefore requests a hearing on his motion on Thursday, March 10, 2022, or as soon thereafter as the matter may be heard. Briefing shall be submitted in accordance with L.R. 7-3(a). This motion is based on this notice of motion; the attached memorandum of points and authorities; the declarations of Thomas McCarthy and Bryan Weir; all records on file with this Court; and such other and further oral and written arguments as may be presented at, or prior to, the hearing on this matter.

Petitioner's counsel will serve a copy of these filings to Uber's counsel immediately after they are filed with the Court.

1

**TABLE OF CONTENTS**

2   INTRODUCTION ....................................................................................................1

3      A.   Uber selects the terms of arbitration to govern consumer disputes. .................3

4      B.   Numerous Uber customers (including Petitioners) file discrimination claims against Uber in individual arbitrations with AAA. ...........................................4

5      C.   AAA rejects Uber's bad faith attempts to lobby and pressure it to change its rules and fee structure. ...................................................................................5

6

7      D.   Uber attempts to evade AAA's decisions by bringing suit in New York. ......................6

ARGUMENT ..........................................................................................................8

8      A.   This court should grant petitioners' motion to compel arbitration under the FAA. .........8

9      B.   This court should enjoin Uber from pursuing its ongoing lawsuit. ................11

10         1.   Uber's New York suit challenging AAA's fees is fully arbitrable..........................11

11         2.   This Court has authority to enjoin Uber from pursuing suits in other jurisdictions. ....................................................................................14

12         3.   There is no reason to refuse to exercise this Court's jurisdiction to enjoin Uber from pursuing its New York action. ........................................15

13

14      C.   This Court Should Grant Petitioners Relief Under Cal. Civ. Pro. §§1281.98 and 1281.99. ..................................................................................20

15   CONCLUSION .....................................................................................................22

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.L. Williams & Assocs., Inc. v. McMahon*,
   697 F. Supp. 488 (N.D. Ga. 1988)............................................................14, 17, 18

*Abadilla v. Uber Techs., Inc.*,
   No. 3:18-cv-7343 (N.D. Cal.)............................................................................13

*Abernathy v. DoorDash, Inc.*,
   438 F. Supp. 3d 1062 (N.D. Cal. 2020)............................................................11

*Adams v. Postmates, Inc.*,
   414 F. Supp. 3d 1246 (N.D. Cal. 2019)............................................................13

*Adams v. Postmates, Inc.*,
   823 F. App'x 535 (9th Cir. 2020)......................................................................13

*Agerkop v. Sisyphian LLC*,
   2021 WL 1940456 (C.D. Cal.)..........................................................................22

*Allemeier v. Zyppah, Inc.*,
   2018 WL 6038340 (C.D. Cal.)......................................................................9, 10

*Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*,
   398 U.S. 281 (1970)..........................................................................................18

*Brown v. Pac. Life Ins. Co.*,
   462 F.3d 384 (5th Cir. 2006).............................................................................19

*CarMax Auto Superstores Cal. LLC v. Hernandez*,
   94 F. Supp. 3d 1078 (C.D. Cal. 2015)........................................................15, 19

*Cent. Reserve Life Ins. Co. v. Kiefer*,
   211 F.R.D. 445 (S.D. Ala. 2002)................................................................15, 19

*Chabner v. United of Omaha Life Ins. Co.*,
   225 F.3d 1042 (9th Cir. 2000).............................................................................4

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000).........................................................................8, 9

*Circuit City Stores, Inc. v. Najd*,
   294 F.3d 1104 (9th Cir. 2002)...........................................................................19

*Colo. River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976)....................................................................................16, 18

*Cordas v. Uber Techs., Inc.*,
   228 F. Supp. 3d 985 (N.D. Cal. 2017)............................................................1, 9

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)............................................................................................9

*Dekker v. Vivint Solar, Inc.*,
   479 F. Supp. 3d 834 (N.D. Cal. 2020)..............................................................21

*Great Earth Cos., Inc. v. Simons*,
   288 F.3d 878 (6th Cir. 2002).......................................................................18, 19

*Hagan v. Park Miller LLC*,
   2021 WL 1688347 (N.D. Cal.)..........................................................................22

*Halloran v. Davis*,
    2013 WL 12153551 (C.D. Cal.) ...................................................................10

*Hansberry v. Lee*,
    311 U.S. 32 (1940) ......................................................................................10

*Imbruce v. Am. Arb. Ass'n, Inc.*,
    2016 WL 5339551 (S.D.N.Y.) ...................................................................13

*In re Arb. Between Nuclear Elec. Ins. Ltd. and Cent. Power & Light Co.*,
    926 F. Supp. 428 (S.D.N.Y. 1996) ..........................................................19

*Indep. Living Res. Center San Fran. v. Uber Techs., Inc.*,
    2019 WL 3430656 (N.D. Cal.) ....................................................................9

*Ins. Newsnet.com, Inc. v. Pardine*,
    2011 WL 3423081 (M.D. Pa.) ..............................................................15, 19

*Landmark Ventures, Inc. v. Cohen*,
    2014 WL 6784397 (S.D.N.Y.) ...................................................................13

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
    363 F.3d 1010 (9th Cir. 2004) .....................................................................9

*McClellan v. Carland*,
    217 U.S. 268 (1910) ....................................................................................16

*Meyer v. Uber Techs., Inc.*,
    2016 WL 3662485 (S.D.N.Y.) .....................................................................4

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ..........................................................................16, 17, 18

*New Eng. Cleaning Servs., Inc. v. Am. Arb. Ass'n*,
    199 F.3d 542 (1st Cir. 1999) ......................................................................14

*Sabatino v. Uber Techs., Inc.*,
    2015 WL 2160125 (N.D. Cal.) ..................................................................1, 4

*Sathianathan v. Pac. Exch., Inc.*,
    248 F. App'x 345 (3d Cir. 2007) ...............................................................14

*Shamitoff v. Richards*,
    2014 WL 3939910 (E.D. Cal.) ...................................................................14

*Specialty Bakeries, Inc. v. RobHal, Inc.*,
    961 F. Supp. 822 (E.D. Pa. 1997) .........................................................15, 19

*Stasz v. Schwab*,
    121 Cal. App. 4th 420 (2004) ....................................................................13

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ....................................................................................10

*TranSouth Fin. Corp. v. Bell*,
    149 F.3d 1292 (11th Cir. 1998) ..................................................................19

*Uber Techs., Inc. v. Am. Arbitration Ass'n, Inc.*,
    No. 655549/2021 (N.Y. Sup. Ct.) ...............................................................22

*Watermark Harvard Square, LLC v. Calvin*,
    2018 WL 1166707 (D. Colo.) ................................................................15, 18

*Watermark Harvard Square, LLC v. Calvin*,
    2018 WL 1952587 (D. Colo.)...................................................................................15

**Statutes**

28 U.S.C. §2283 ............................................................................................18, 19

42 U.S.C. §1981 .............................................................................................1, 4

9 U.S.C. §4 .................................................................................................9, 14

Cal. Civ. Code §51 ...............................................................................................1

Cal. Civ. Code §52 ...............................................................................................1

Cal. Civ. Pro. §1281.98 ..............................................................................20, 21, 22

Cal. Civ. Pro. §1281.99 ........................................................................................22

**Other Authorities**

AAA Consumer Rule R-49 .......................................................................................7

S. Judiciary Comm. Hr'g on SB 707, 2019–2020 (Cal. Apr. 23, 2019) .....................................21

S. Judiciary Comm. Hr'g on SB 707, 2019-2020 (Cal. June 18, 2019) ......................................21

Uber, First Quarter Results 2021 (May 5, 2021), ubr.to/37RUtEU ...........................................3

Uber, Fourth Quarter and Full Year Results 2020 (Feb. 10, 2021), ubr.to/2UlBzmP ...................3

UBER, Nasdaq Market Cap. (Aug. 16, 2021), bit.ly/2VTWgHw...................................................3

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Uber requires consumers who use its services to resolve disputes in individual arbitration before the American Arbitration Association ("AAA"). Uber enforces that agreement against consumers who try to sue Uber in court—including this one. *See, e.g.*, *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985 (N.D. Cal. 2017) (granting Uber's motion to compel arbitration of consumer's claim). Petitioners here are 7,271 individuals who filed arbitration demands against Uber. They seek to hold Uber liable for its racially discriminatory pricing pursuant to a promotion that ran on the Uber Eats platform during 2020. Under that promotion, Uber offered food delivery discounts based on the race of a restaurant owner, in a blatant violation of California's Unruh Civil Rights Act ("Unruh"), Cal. Civ. Code §§51-52, and 42 U.S.C. §1981. But this petition is not about the merits of Petitioners' claims. It is about their ability to press those claims in the only forum available to them—and Uber's desperate attempts to prevent them from doing so.

Specifically, to defend its arbitration agreement from unconscionability attacks, Uber has agreed to pay AAA's published fees for processing and managing the arbitrations that consumers file against it—fees that AAA requires before any arbitration can proceed. And Uber expressly relies on its commitment to pay those fees as a reason to enforce its arbitration clause against consumers. *See, e.g.*, Uber Mot. to Compel, *Sabatino v. Uber Techs., Inc.*, 2015 WL 2160125, at 13, 16-19 (N.D. Cal.). Yet after paying the initial case filing fees for Petitioners, Uber spent months trying to bully AAA into departing from Uber's arbitration agreement, charge Uber different fees, and impose bellwether or other collective procedures that would delay Petitioners' cases. AAA mostly resisted these tactics, ultimately determining that the consumer claims would proceed in five batches, with Uber being invoiced for administrative fees at the beginning of each batch. AAA first invoiced Uber for an initial batch of 477 individuals in April 2021, and informed Uber that it would issue invoices for the next four batches (each consisting of 7,771 claimants) as arbitrator assignments in the prior batch were completed. Uber paid the initial case management invoice of $667,800 for the first 477 cases, and those arbitrations have been proceeding.

But when AAA invoiced Uber for the next batch on September 20, 2021, Uber refused to pay. It instead resisted arbitration of these cases and sued AAA in New York. In that lawsuit, Uber sought to escape the terms of its own arbitration agreement—specifically, the fee structure and arbitration procedures that it adopted. Though Petitioners' efforts to intervene in that case were rejected, the New York trial court also rejected Uber's motion for a preliminary injunction, holding that it was unlikely to succeed on the merits of its claim and could not meet the other requirements for an injunction. As the trial court noted, "Uber has used its unequal bargaining power to require [Claimants] to pursue claims for relief against it in an arbitral forum, as individualized cases, in accordance with the AAA's published rules. That was a business choice Uber made—and Uber is now stuck with the decision." *See* Declaration of Bryan Weir ("Weir Decl."), Ex. G, at 7.

Undeterred, Uber pressed for and obtained interim administrative relief from the New York appellate court. Without expressing any view on the merits, the appellate court ordered AAA to accept a partial payment that covers only 500 cases while briefing of Uber's appeal is completed. Given that schedule, the New York courts is unlikely to dispose of Uber's appeal for months. In the meantime, Uber's refusal to pay the fees necessary for Petitioners' cases means that after a year, they still cannot proceed. In other words, Uber has effectively stripped Petitioners of their right to court *and* arbitration, leaving them no forum to proceed with their claims.

Uber's ongoing attempts to prevent Petitioner from arbitrating their cases violates federal and California law. The Federal Arbitration Act ("FAA") was designed to ensure the enforcement of arbitration agreements, and it empowers federal courts to compel Uber to honor its agreement to arbitrate Petitioners' claims. Federal courts also frequently enjoin parties from running to state courts to avoid arbitration, as Uber has done here. California law separately prohibits Uber's attempt to avoid arbitration by refusing to pay fees, declaring such actions to be a material breach of the contract and authorizing court orders to compel payment of necessary fees. And AAA itself has already determined that the failure to pay the invoice constitutes a breach of the contract. Petitioners therefore request this Court enter an order enforcing the bargain that Uber itself forced upon them: to proceed to arbitration before AAA and cease all ongoing and future attempts to avoid the consequences of its own promises.

**BACKGROUND**

**A.  Uber selects the terms of arbitration to govern consumer disputes.**

Uber is an app- and web-based company that is worth approximately $84 billion. *See* UBER, Nasdaq Market Cap. (Aug. 16, 2021), bit.ly/2VTWgHw. It earns approximately $11 billion in annual revenue from about 100 million customers who regularly use its platforms. *See* Uber, Fourth Quarter and Full Year Results 2020 (Feb. 10, 2021), ubr.to/2UlBzmP; Uber, First Quarter Results 2021 (May 5, 2021), ubr.to/37RUtEU. One of those platforms is a service called Uber Eats, which allows customers to place food-delivery orders from restaurants.

Like other large corporations, Uber has imposed an arbitration agreement on its customers as a condition of using its services, including as a condition of using Uber Eats. *See* Declaration of Thomas McCarthy ("McCarthy Decl."), Ex. A, §2. That agreement requires all customers "to resolve any claim that you may have against Uber on an individual basis in arbitration." *Id.* at 2. More particularly, Uber forces its customers into arbitration for "any dispute, claim or controversy arising out of or relating to (a) these Terms or the existence, breach, termination, enforcement, interpretation or validity thereof, or (b) your access to or use of the Services at any time, whether before or after the date you agreed to the Terms." *Id.* The arbitrator has "exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including any claim that all or any part of this Arbitration Agreement is void or voidable." *Id.*

Uber specifically requires customers to "waiv[e] the right to a trial by jury or to participate as a plaintiff or class member in any purported class action or representative proceeding." *Id.* at 3. Uber's consumer arbitration agreement provides that "[t]he arbitration will be administered by the American Arbitration Association ('AAA') in accordance with the AAA's Consumer Arbitration Rules." *Id.* It expressly incorporates AAA's published fee schedule and provides that "[y]our responsibility to pay any AAA filing, administrative and arbitrator fees will be solely *as set forth in the AAA Rules*." *Id.* at 4 (emphasis added). And Uber expressly promises to absorb all those fees for any customer whose "claim for damages does not exceed $75,000." *Id.* AAA's Consumer Rules

further explain that the business will pay a "Case Management Fee" or "$1,400" per case that "must be paid prior to the arbitrator appointment process" and at least "$1,500 per case" for "Arbitrator Compensation." McCarthy Decl., Ex. B at 33.

Uber made this promise to assure its customers—and the courts and AAA—that its arbitration agreement is fair to customers and not unconscionable. Indeed, Uber routinely enforces its arbitration agreement against customers and, in doing so, uniformly relies on its promise to pay all AAA fees to justify forcing customers into individual arbitration. Uber has argued time and again that its arbitration agreement "safeguard[s] access to the arbitral forum" and defeats "an unconscionability challenge" precisely because Uber agreed to pay "all" AAA "filing, administrative, and arbitrator fees." Uber Mot. to Compel, *Meyer v. Uber Techs., Inc.*, 2016 WL 3662485, at *6, 18 (S.D.N.Y.); *see also, e.g.*, Uber Mot. to Compel, *Sabatino*, 2015 WL 2160125 at 13, 16-19 (similar).

### B. Numerous Uber customers (including Petitioners) file discrimination claims against Uber in individual arbitrations with AAA.

Between June 4 and December 31, 2020, Uber openly adopted and implemented a racially discriminatory pricing scheme. *See* Weir Decl. ¶4. Under that scheme, Uber viewed the businesses on its platform as two groups separated by a racial line. To Uber, businesses identified as "Black-Owned" were on one side; all other businesses (*i.e.*, the non-"Black-Owned" businesses) were on the other. Having distinguished these businesses by race, Uber charged no delivery fees to customers who ordered from "Black-owned" businesses while penalizing customers who ordered from non-"Black-owned" businesses by charging them delivery fees. *Id.* ¶5.

Petitioners are customers who used the Uber Eats app to order from non-"Black-owned" businesses during the relevant period and paid the discriminatory delivery fee. They assert that Uber's express race-based discrimination violated Unruh and 42 U.S.C. §1981. *See, e.g.*, *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1050 (9th Cir. 2000) (Unruh bars "discrimination in the form of pricing differentials"). Because Uber's arbitration agreement allowed them to vindicate their claims only through individual arbitration, Petitioners and more than 20,000 other customers filed arbitration demands with AAA between October and December of 2020. On

December 16, 2020, AAA advised the parties that claimants met AAA's filing requirements and directed Uber to pay a total of $4,346,625 in filing fees. McCarthy Decl., Ex. C. Uber paid the entire amount of filing fees on December 24, 2020. *Id.*, Ex. D.

### C. AAA rejects Uber's bad faith attempts to lobby and pressure it to change its rules and fee structure.

After Uber paid the initial filing fees, it launched a campaign to lobby AAA to alter the subsequent fees and process that Uber itself had chosen and imposed on consumers. Though Uber bars its customers from bringing collective actions, Uber itself promptly sought to impose collective-action procedures on these individual arbitrations and demanded a reduction in AAA's fees along with those procedural changes. *See, e.g.*, McCarthy Decl., Ex. E at 4-5. Uber stooped to threatening AAA's staff and questioning its impartiality for applying AAA's published fee schedule according to its express terms. *Id.* at 3-5. And it has demanded that AAA's arbitrators not be fully compensated for their work in these cases. *See id.*, Ex. F at 2. AAA resisted Uber's threats, noted that Uber itself chose individual arbitration before AAA and AAA's Consumer Rules, and rejected Uber's attempts to alter the terms of its arbitration agreement. *See, e.g.*, *id.*, Ex. G at 5.

On April 2, 2021, AAA advised Uber that it would divide the claimants into five batches— a first batch of 477 claimants followed by four 7,771-claimant batches. *Id.* at 3-4. AAA also advised Uber on April 2 that "[o]nce arbitrators are appointed to the first batch of 477 cases, we will … bill Case Management Fees for the next batch of 7,771 matters." *Id.* At AAA's long-posted rates, that would amount to $667,800 in case management fees for the first batch (477 cases x $1,400/case) and $10,879,400 in case management fees for the second batch (7,771 cases x $1,400/case). Despite its protestations, Uber paid $667,800 in case management fees for the first 477 arbitration on May 13, 2021. McCarthy Decl., Ex. H. AAA began assigning arbitrators for those cases, and they have since been moving forward—with a number of claimants obtaining successful awards. McCarthy Decl. ¶4.

AAA had nearly finished appointing arbitrators to the first 477 cases by the end of August 2021. McCarthy Decl. ¶4. Because the Claimants had concerns about the pace of arbitrator appointment, they wrote AAA on August 30 to inquire when the next batch of 7,771 Claimants

(which include the Petitioners here) would start proceeding. *Id.*, Ex. J. On September 14, AAA responded: "As noted in the AAA's correspondence dated April 2 and 23, 2021, 'after most of the arbitrator appointments for the first 477 cases have been confirmed, we will request case management fees for the next batch of 7,771 cases.'" *Id.*, Ex. K at 1. And because "most of the arbitrator appointments for the first 477 cases have now been confirmed, the AAA requests payment of the Case Management fees for 7,771 cases" in the amount of "$10,879,000." *Id.* Notably, AAA also specifically informed Uber that "[a]s these arbitrations are subject to California Code of Civil Procedure 1281.97 and 1281.98, payment must be received within 60 days of the date of this letter. The AAA will not grant any extensions to this payment deadline." *Id.*

### D.  Uber attempts to evade AAA's decisions by bringing suit in New York.

Six days later, on September 20, Uber filed a complaint and motion for preliminary injunction in New York trial court, seeking to renege on its promise to pay AAA's long-posted fees. *See* Weir Decl., Ex. A. Uber asked the New York court for a preliminary injunction to "extend[] the invoiced deadline" and "enjoin[] the AAA from issuing any additional invoices." Weir Decl., Ex. B. Though AAA simply applied its posted fee schedule in invoicing Uber, Uber claimed that it had a right to extensive internal financial information from AAA in order to determine whether AAA's case-management fees are reasonable. *Id.* at 16. Indeed, Uber sought an "accounting" of "AAA's costs and expenses" incurred in relation to the fees invoiced. *Id.* at 708.

Several Petitioners sought to intervene in Uber's suit to assert their own interest in arbitrations proceeding without delay. Weir Decl., Ex. C. Uber opposed Petitioners' intervention, and the trial court denied the motion to intervene. Weir Decl. Exs. D & E. Although Petitioners were permitted to file an amicus brief in the New York trial court, they are not parties to the action and have not otherwise participated in the trial or appellate proceedings.

AAA opposed Uber's motion for a preliminary injunction. *See* Weir Decl., Ex. F. Among other things, AAA noted that the suit violated the principle of arbitral immunity, ignored the very terms of the contract Uber itself drafted and imposed on Claimants, *id.* at 6-11, and violated the AAA's own rules—which Uber chose and incorporated into the parties' agreement—providing

MOTION TO COMPEL ARBITRATION, TO STAY PARALLEL PROCEEDINGS, AND
FOR OTHER RELIEF   CASE NO: 3:21-cv-09577

6

that "[n]either the AAA nor any arbitrator in a proceeding under these Rules is a necessary or proper party in judicial proceedings relating to the arbitration" and that "neither the AAA, AAA employees, nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules." *Id.* at 11-13 (citing AAA Consumer Rule R-49(b), (d)). AAA also argued that the Claimants were the real party in interest here, and that "AAA should not have been left in a position where it has to defend allegations directed at Claimants and their counsel, and where Uber is [arguing] that AAA should be compelled to administer the arbitrations in a manner that Claimants contend is not authorized by the Arbitration Agreements." *Id.* at 22-23.

Following a multi-day evidentiary hearing, the New York trial court denied Uber's request for a preliminary injunction on October 14, 2021. Weir Decl., Ex. G. The trial court concluded that Uber (1) failed to establish irreparable harm, since "Uber conceded that it has the ability to pay the invoice" and payment "will not cause Uber to be insolvent"; (2) Uber had not shown a likelihood of success on the merits, since Uber itself required Claimants "to arbitrate disputes," the AAA's rates for its services are "pursuant to a published fee schedule" which Uber knew about, and Uber's suit was also likely to be barred by arbitral immunity, which protects AAA from suits challenging its fees and administration of the arbitrations; (3) the balance of the equities did not favor Uber because it "used its unequal bargaining power" to impose arbitration "as individualized cases, in accordance with the AAA's published rules"; and (4) to the extent Uber was concerned about the effect of California statutes imposing duties on companies that deployed arbitration agreements, the "court [was] not in any position to second-guess the wisdom of the California legislature in this area." *Id.* at 5-8.

Uber appealed the decision to the New York Appellate Division, First Department, on October 15, 2021. As part of its appeal, Uber sought interim relief. On October 20, 2021, a single justice of the Appellate Division entered an interim administrative (two-sentence) order providing that Uber's request was "granted to the extent that the time for movant to pay the invoice with a due date of October 14th, 2021 is extended until a determination by the full bench, conditioned on movant paying to AAA $700,000 to cover the cost of arbitrator appointment." Weir Decl., Ex. H.

Uber subsequently tendered $700,000 to AAA, which accepted the payment on October 22. In confirming receipt, AAA informed the parties that "Uber's payment of $700,000 covers the Case Management Fees for 500 cases ($1,400 per case). Therefore, at this time the AAA will proceed with the further administration of 500 cases." Weir Decl., Ex. I. AAA has nearly completed the appointment of arbitrators to those 500 additional cases. McCarthy Decl. ¶4. Though AAA stands ready to continue arbitrator appointment for the remaining 7,271 cases, it will not do so until Uber pays AAA's published fees.

On December 2, 2021, the New York Appellate Division entered a five-sentence order which did not address the merits of Uber's appeal but further granted interim relief to Uber "on the condition that [Uber] perfect the appeal for the March 2022 Term of this Court and upon the condition imposed by the Interim Order of a Justice of this Court dated October 20, 2021." Weir Decl., Ex. J. Thus, despite losing on every issue before the trial court, Uber's appeal of its preliminary injunction will remain pending in the New York appellate courts well into 2022 (if not longer). Uber's ongoing litigation threatens to substantially delay and frustrate Petitioners' rights to arbitrate their cases, which already have been pending for more than a year without any progress toward vindicating their claims.

## ARGUMENT

### A.  This court should grant Petitioners' motion to compel arbitration under the FAA.

The FAA requires federal courts to compel arbitration when a party that agrees to arbitrate refuses to do so. Here, Uber not only agreed to arbitrate—it drafted the agreement, chose the terms, and forced consumers to agree to them as a condition of using its technology. Indeed, Uber already paid AAA's initiation fees *for every one of the Petitioners here*. As a result, this Court should enter an order requiring Uber to proceed with those arbitrations under the terms AAA has set, including its determination of the amount of the fees Uber agreed to pay.

Section 4 of the FAA "provides that any arbitration agreement within its scope 'shall be valid, irrevocable, and enforceable,'" and "permits a party 'aggrieved by the alleged … refusal of another to arbitrate' to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d

1126, 1130 (9th Cir. 2000) (quoting 9 U.S.C. §4) (omission in original); *see also Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The role of a district court under the FAA "is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron*, 207 F.3d at 1130. "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*

Neither of these elements can reasonably be disputed here. A valid agreement to arbitrate Petitioners' disputes unquestionably exists; the terms of Uber's consumer agreements expressly require arbitration "to resolve any claim … against Uber," including claims "arising out of or relating to … all disputes, including your access to or use of the Services at any time[.]" McCarthy Decl., Ex. A, §2 at 2. Uber itself has routinely enforced this broad language to compel consumers to arbitration, including in this Court. *See, e.g.*, *Cordas*, 228 F. Supp. 3d at 988; *Indep. Living Res. Center San Fran. v. Uber Techs., Inc.*, 2019 WL 3430656, at *4 (N.D. Cal.). And Uber itself has already conceded the validity of the arbitration agreements at issue here by paying AAA the initiation fees for every one of Petitioners here. McCarthy Decl., Exs. C-D.

This Court must therefore enforce Petitioners' motion to "compel[] arbitration *in the manner provided for in the agreement*." *Chiron*, 207 F.3d at 1130 (emphasis added); *see also id.* (holding that "the [FAA] requires the court to enforce the arbitration agreement *in accordance with its terms*" (emphasis added)). Here, those terms require Uber to pay the necessary fees for arbitrator appointment. McCarthy Decl., Ex. A, §2 at 4. AAA has already determined that Uber owes the fees under the terms of the contract that Uber itself wrote, *id.*, Ex. K, and the only reason Petitioners' arbitrations are not proceeding is because Uber refuses to pay the fees, *id.*

In these circumstances, the FAA authorizes courts to enter an order requiring Uber to comply with AAA's determinations of the fees necessary to commence arbitration. For example, in *Allemeier v. Zyppah, Inc.*, 2018 WL 6038340, at *1 (C.D. Cal.), the petitioner filed a demand

for arbitration with AAA against his former employer, and AAA determined that he had satisfied his filing requirements. AAA ordered the employer to pay its share of the filing fees, but the employer refused to do so. *Id.* at *1-2. When AAA declined to proceed with the arbitration because of that nonpayment, the petitioner moved to compel. The district court granted the motion and ordered the employer to proceed with the petitioner's arbitration by "pay[ing] any fees that the AAA allocate[d] to it and … comply[ing] with any other requirements that the AAA impose[d]." *Id.* at *4; *see also Halloran v. Davis*, 2013 WL 12153551, at *2 (C.D. Cal.) (ordering the parties to "submit their claims to arbitration and pay arbitration fees and costs as required by the rules and procedures of the AAA").

Uber no doubt will seek to avoid arbitration on the grounds that it has asserted in its New York litigation—*i.e.*, that AAA's enforcement of its fee schedule is "unreasonable" and therefore Uber should be granted some accommodation from the specific terms that it selected and incorporated into its fee agreement. But the New York action is of no help to Uber here, for two reasons.

*First*, Petitioners are not parties to that action and therefore cannot be legally bound by its findings. "It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Hansberry v. Lee*, 311 U.S. 32, 40 (1940); *see also Taylor v. Sturgell*, 553 U.S. 880, 892-93 (2008) ("A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit."). Petitioners have their own right to enforce the arbitration agreement, including its provisions requiring the payment of fees Uber promised to pay in order for the arbitration to proceed. Indeed, some of the Petitioners here tried to intervene in the New York action to protect their rights, but Uber successfully opposed that intervention. Weir Decl., Ex. D & E. Having kept Petitioners out of the New York action, Uber cannot now claim that Petitioners must await the outcome of that litigation. The New York action cannot and will not resolve the merits of Petitioners' motion to compel here.

*Second*, the New York action itself is a violation of the arbitration agreement, and the FAA authorizes this Court to enjoin Uber from pursuing it further. *See infra*, B.1. Indeed, as explained below, all of the questions Uber has raised in the New York action have been delegated to the arbitrator, and thus Uber's dispute over the fees it owes AAA for Petitioners' arbitrations can be raised and adjudicated only in the arbitration proceedings.

In sum, Uber has "forced arbitration clauses upon [Petitioners], thus taking away their right to go to court, and forced class-action waivers upon them too, thus taking away their ability to join collectively to vindicate common rights." *Abernathy v. DoorDash, Inc*., 438 F. Supp. 3d 1062, 1067 (N.D. Cal. 2020). Now consumers "wish to enforce the very provisions forced on them by seeking, even if by the thousands, individual arbitrations, the remnant of procedural rights left to them … [Uber], faced with having to actually honor its side of the bargain, now blanches at the cost of the filing fees it agreed to pay in the arbitration clause." *Id.* at 1068. This Court should reject Uber's hypocrisy here and do precisely what Uber so many times demands of its consumers: enforce the arbitration provision and compel Uber to arbitrate under the terms it drafted and imposed upon Petitioners.

**B. This court should enjoin Uber from pursuing its ongoing lawsuit.**

This Court can and should enjoin Uber from avoiding arbitration by pursuing litigation in court on arbitrable issues. Instead of challenging the fees and determinations of AAA in arbitration, Uber seeks to delay these cases through state court proceedings. The FAA does not allow this, and Uber's success in delaying Petitioners' claims illustrates why federal courts grant motions to compel that also enjoin litigation in other fora. The Court should do so here.

**1. Uber's New York suit challenging AAA's fees is fully arbitrable.**

Uber's lawsuit in New York challenges the reasonableness of the fees that AAA has assessed Uber under the arbitration agreement that Uber drafted. In Uber's own words, its case "concerns the administrative fees and arbitrator costs that the AAA charges[.]" Weir Decl., Ex. A, at 8, ¶15. Uber complains that AAA's fees violate the arbitration agreement, *id.* ¶¶93, 97; that those fees are "unreasonable," *id.* ¶97; and that they violate implied contractual duties of AAA, *id.* ¶¶102-07.

The problem for Uber is that the fees in question are set by the contract—*which Uber drafted.* The arbitration agreement specifically states that "[t]he arbitration will be administered by the American Arbitration Association ('AAA') in accordance with the AAA's Consumer Arbitration Rules." McCarthy Decl., Ex. A, at §2. It expressly incorporates AAA's published fee schedule, providing that a consumer's "responsibility to pay any AAA filing, administrative and arbitrator fees will be solely *as set forth in the AAA Rules*." *Id.* at 4 (emphasis added). And Uber expressly promises to absorb all these fees for any customer whose "claim for damages does not exceed $75,000." *Id.* The incorporated AAA Consumer Rules further explain that the business will pay a "Case Management Fee" or "$1,400" per case that "must be paid prior to the arbitrator appointment process" and at least "$1,500 per case" for "Arbitrator Compensation." McCarthy Decl., Ex. B at 33.

Because these fees—and Uber's duty to pay them—are set by contract, they are an arbitral issue. Uber's arbitration agreement selects the forum for all dispute resolution (AAA), the rules (AAA's Consumer Rules), and the applicable fees (those "set forth in the AAA Rules"). And its terms make clear that "[t]he arbitrator has exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including any claim that all or any part of this Arbitration Agreement is void or voidable." *Id.* That, of course, includes any question about the application of the contracted-for fees.

Moreover, AAA's Consumer Rules—which *Uber* expressly adopted and incorporated into the contract—make doubly clear that any questions about AAA's fees are to be resolved by arbitration. Consumer Rule 4 addresses "Administrative Fees," which include AAA's case-management fees. *See* McCarthy Decl., Ex. B ("Costs of Arbitration" and "AAA Administrative Fees"). And Rule 53 specifically provides that "[t]he arbitrator shall interpret and apply these Rules." Consumer Rule 53. As the New York trial court itself observed, "[t]he AAA's rates for its services are set pursuant to a published fee schedule … Presumably, Uber knew that when it required [Petitioners] to arbitrate individualized cases with the AAA." Weir Decl., Ex. G, at 6.

*Of course* Uber knows this—which is what makes its New York gambit particularly galling. When *individuals* try to take arbitral fee disputes to court—as Uber is doing here—this is how Uber responds:

> [T]he crux of Petitioners' motion is a dispute with regard to the payment of the initial JAMS filing fee. … Petitioners should not be allowed to manufacture a dispute over fees, and then eschew the very forum in which they agreed to resolve that dispute. Accordingly, the Court should deny Petitioners' motion, and order them to submit their dispute to JAMS for resolution.

Uber's Br. at 1, *Abadilla v. Uber Techs., Inc.*, No. 3:18-cv-7343 (N.D. Cal. filed Jan. 14, 2019) (Dkt. 53); *see also* Uber Br. at 1, *Abadilla v. Uber Techs., Inc.*, 3:18-cv-7343 (N.D. Cal. filed Mar. 19, 2019) (Dkt. 79) ("[T]his Court lacks jurisdiction because Petitioners agreed to arbitration, and the delegation clause in the applicable arbitration agreement requires that all disputes regarding arbitrability, including filing fee payments, must be resolved by the arbitrator.").

The same result must follow here. Just as Uber demands that its consumers litigate their fee disputes before the arbitrator, Uber must do the same. Indeed, if Uber had sued Petitioners themselves in court on this issue, there is no doubt that an order to compel arbitration would follow. *See, e.g.*, *Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1256 (N.D. Cal. 2019), *aff'd*, 823 F. App'x 535 (9th Cir. 2020). Uber's strategy should be seen for what it is—a desperate move by a company to ditch the promises it made to its consumers and run away from the exclusive forum that it alone selected.[1] The Court should reject Uber's duplicity.

---

[1] Uber's New York suit is utterly meritless on other grounds as well, most obviously because "arbitrators and sponsoring arbitration organizations have absolute immunity for conduct in connection with an arbitration." *Landmark Ventures, Inc. v. Cohen*, 2014 WL 6784397, at *4 (S.D.N.Y.). The New York trial court noted that Uber was unlikely to succeed on these grounds, as well. *See* Weir Decl., Ex. G, at 6-7. And this is no doubt correct; the "unequivocal" rule of "absolute immunity" is "the uniform rule accepted by every [federal] Court of Appeals to have considered the issue." *Landmark Ventures*, 2014 WL 6784397, at *4 (collecting cases). And it extends to challenges like Uber's, which seek to litigate the administrative process and fees imposed by the arbitrator. *See, e.g.*, *Imbruce v. Am. Arb. Ass'n, Inc.*, 2016 WL 5339551, at *3 (S.D.N.Y.) ("selecting arbitrator, billing for services, and scheduling hearing [is] 'sufficiently related to the arbitration to be protected by immunity'"); *Stasz v. Schwab*, 121 Cal. App. 4th 420, 433 (2004) ("[A] sponsoring organization is immune from liability … where the organization has

1

2

### 2. This Court has authority to enjoin Uber from pursuing suits in other jurisdictions.

The FAA authorizes this Court to issue orders to parties to an arbitration agreement "directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. §4. Such an order would be worthless, however, if a party could hop from court to court and force their opponent to chase them in order to enforce their arbitral rights. And indeed, Uber successfully opposed some Petitioners' attempts to intervene in the New York action to protect their arbitral rights. But this Court has authority to enter an injunction against Uber from pursuing the New York action. Other courts have done so in similar circumstances.

For example, in *A.L. Williams & Assocs., Inc. v. McMahon*, 697 F. Supp. 488 (N.D. Ga. 1988), a federal court in Georgia was asked to compel arbitration of an employment dispute under §4 of the FAA and stay proceedings initiated six weeks earlier by the opposing party in California state court. *Id.* at 489, 491. The court concluded that the claims asserted in the California action were, in fact, subject to an arbitration agreement. *Id.* at 493-94. Having reached that determination, the court had little problem determining that it could "properly enjoin the California state court" action, given that "the policies embodied in the federal arbitration act militate against having ongoing state proceedings at the very time that those same claims are the subject of arbitration proceedings." *Id.* at 494-95. As a result, the court "conclude[d] that the principle of judicial economy, the strong judicial policy expressed by the Supreme Court favoring arbitration, and the policies embodied in the federal arbitration act warrant, and even require, a stay of the California action." *Id.* at 495.

---

engaged in tasks such as selecting an arbitrator, scheduling a hearing, giving notice of a hearing, and billing for services."); *see also Sathianathan v. Pac. Exch., Inc.*, 248 F. App'x 345, 348 (3d Cir. 2007) ("Defendants are similarly immune from appellant's attempt to overturn the arbitrators' assessment of forum fees, which are properly viewed as part of the arbitration award."). And courts have had no trouble in applying this rule of absolute arbitral immunity to AAA's specific fee process. *See New Eng. Cleaning Servs., Inc. v. Am. Arb. Ass'n*, 199 F.3d 542, 545 (1st Cir. 1999) ("AAA's administrative acts of which NECS complains—including selecting an arbitrator, *billing NECS for its services*, and scheduling a hearing—were sufficiently related to the arbitration to be protected by immunity." (emphasis added)); *Shamitoff v. Richards*, 2014 WL 3939910, at *5 (E.D. Cal.) ("[I]n setting up and billing for the arbitration, established precedent makes it clear that the AAA enjoys immunity as well").

Courts across the country are in agreement. *See, e.g.*, *Watermark Harvard Square, LLC v. Calvin*, 2018 WL 1166707, at *9 (D. Colo.) ("[B]ecause Defendant has refused to submit her claims to mediation and binding arbitration as required by the Arbitration Agreement, the court recommends entering an Order directing the parties to do so and enjoin Defendant from further pursuing the underlying state court litigation."), *R. & R. adopted,* 2018 WL 1952587 (D. Colo.); *CarMax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1127 (C.D. Cal. 2015) ("stay[ing] the state court action currently pending in Superior Court pending resolution of the arbitration in this matter" and collecting cases); *Ins. Newsnet.com, Inc. v. Pardine*, 2011 WL 3423081, at *4 (M.D. Pa.) (granting "petition to compel arbitration and stay related state court proceedings"); *Cent. Reserve Life Ins. Co. v. Kiefer*, 211 F.R.D. 445, 451 (S.D. Ala. 2002) (finding that "the Defendant is bound by the arbitration clause [and] that a stay of the parallel state court proceeding against [the Defendant] to be proper"); *Specialty Bakeries, Inc. v. RobHal, Inc.*, 961 F. Supp. 822, 830 (E.D. Pa. 1997) (holding that "[a] preliminary injunction restraining [the Respondent] from proceeding in state court is necessary … Otherwise, [the Respondent] can obtain full and complete injunctive relief and money damages in the state court. … Little or nothing would be left for the arbitrator").

The same result should follow here. As in *A.L. Williams*, Uber has initiated a dispute in New York to try and resolve an issue that the underlying agreement expressly delegates to the arbitrator. If Uber succeeds, it will not only have succeeded in forcing its dispute to court instead of arbitration but to a forum that—at Uber's urging—prohibited Petitioners from intervening to assert their rights. It is thus appropriate as a matter of federal law and the policies animating the FAA to enjoin Uber from any further attempts to obstruct the arbitrations, including maintaining its New York lawsuit.

### 3.   There is no reason to refuse to exercise this Court's jurisdiction to enjoin Uber from pursuing its New York action.

Parties opposing this type of injunctive relief typically raise two obstacles to the court's entering an order that requires the Respondent to cease ongoing state court proceedings: abstention and the Anti-Injunction Act. Neither can give Uber any help here.

1    ***Abstention is not required.*** "Abstention from the exercise of federal jurisdiction is the

2    exception, not the rule." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813

3    (1976). Because federal courts have a "virtually unflagging obligation … to exercise the

4    jurisdiction given them," the general rule is that "the pendency of an action in the state court is no

5    bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* at 817

6    (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). Thus, when considering the factors

7    used in determining whether to abstain from a matter, "the balance [is] heavily weighted in favor

8    of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S.

9    1, 16 (1983).

10   *Moses H. Cone* involved a case in a similar procedural posture as this one: a hospital that

11   was party to an agreement with a construction company filed a declaratory action in state court.

12   *Id.* at 7. The construction company then filed a federal suit seeking to enforce the arbitration

13   provision in that agreement. *Id.* The district court decided to stay the federal action pending

14   resolution of the state court proceedings, which the construction company successfully appealed.

15   *Id.* at 7-8. The hospital sought review in the Supreme Court, which granted certiorari to decide

16   (among other things) whether the stay was proper "in light of the policies of the [FAA] and of our

17   decisions" on abstention. *Id.* at 4.

18   The Court held that abstention was not justified. It itemized a number of relevant factors,

19   finding that on balance they fell short of establishing the requisite "exceptional circumstances" to

20   support a refusal to exercise jurisdictions. *Id.* at 14, 19. The Court noted that the case did not

21   involve any contention that (1) the suit involved "res or property" that existed within one court's

22   jurisdiction, or (2) "any contention that the federal forum was any less convenient to the parties

23   than the state forum." *Id.* at 19. And it did not give any weight to (3) "the danger of piecemeal

24   litigation;" since one of the parties to the hospital's state court suit was not a party to the arbitration

25   agreement, the FAA essentially required piecemeal litigation of the hospital's claims. *Id.* at 20.

26   And the Court found no obstacle in (4) the order the cases were filed; because the hospital had not

27   manifested its refusal to arbitrate until it filed its suit, the construction company had no choice but

28   to file a later action. The Court also noted that what mattered more than strict order of filing was

MOTION TO COMPEL ARBITRATION, TO STAY PARALLEL PROCEEDINGS, AND
FOR OTHER RELIEF   CASE NO: 3:21-cv-09577

"how much progress has been made in the two actions." *Id.* at 21. The state court had not taken substantial steps, but the federal court had almost all the information it needed to compel arbitration. *Id.* at 21-22. The Court further emphasized that (5) "federal law provides the rule of decision on the merits." *Id.* at 23. Because "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," this consideration favored the exercise of jurisdiction. *Id.* at 24-25. Finally, the court highlighted "the probable inadequacy of the state-court proceeding to protect [the construction company's] rights," given the "substantial room for doubt that [the company] could obtain from the state court an order compelling the Hospital to arbitrate." *Id.* at 26-27.

Applying these factors here easily supports the general rule in favor of exercising jurisdiction:

*First,* as in *Moses H. Cone*, neither the New York nor this litigation involve any res or real property located in either jurisdiction.

*Second*, this federal suit is not inconvenient for Uber or Claimants—to the contrary, Uber is based in this district, Petitioners were California residents at the time they made their orders, and the arbitration agreement itself selects California law as the governing law and requires California-barred attorneys as arbitrators.

*Third*, there is no risk of piecemeal litigation here if this Court rules on arbitrability. Petitioners seek an injunction so that the issues Uber raises may be resolved in arbitration and challenged alongside any other issues once the arbitration is complete. Absent an injunction, however, piecemeal litigation is guaranteed because the New York action cannot bind Petitioners, who are not parties to that action. *See A.L. Williams*, 697 F. Supp. at 493 ("Having this federal court decide the issues presented will not result in piecemeal litigation, since this court's decision will resolve all of the issues presented.").

*Fourth*, as in *Moses H. Cone*, the state court litigation is not particularly far along; the trial court held only held a preliminary injunction hearing and only that order is on appeal, for which briefing has not yet been completed. Moreover, Petitioners tried to intervene in that proceeding but were denied the opportunity participate. They subsequently moved for relief here shortly after

AAA's deadline for Uber to pay (based on California law) expired. *See A.L. Williams*, 697 F. Supp. At 493 (discounting first-filed state lawsuit that "was instituted less than two months prior to the filing of this action" and where "petitioners acted promptly in filing their federal action"); *Watermark Harvard Square*, 2018 WL 1166707, at *5 (noting that "a mere two months separate the state and federal suits" and that "both cases are in their relative infancy").

*Fifth*, again as in *Moses H. Cone*, federal law governs the arbitrability of these questions. The same strong "federal policy favoring arbitration" controls here, and of course the pending state proceedings are inadequate to protect Petitioners' rights, since they were denied the opportunity to even participate as parties in the New York case. *Moses H. Cone*, 460 U.S. at 24; *see also A.L. Williams*, 697 F. Supp. at 493 ("the fact that federal law provides the rule of decision on the merits, weighs very heavily against this court's relinquishing jurisdiction"); *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 887 (6th Cir. 2002) (affirming district court's exercise of jurisdiction of motion to compel arbitration).

In sum, there is simply no basis here to apply the "extraordinary and narrow exception," *Colo. River*, 424 U.S. at 813, to the ordinary rule that this court will exercise jurisdiction over Petitioners' motion. Indeed, "such power may be exercised only in very limited circumstances and would almost never be exercisable in the context of proceedings to compel arbitration." *A.L. Williams,* 697 F. Supp. at 492-93. Abstention would be improper here.

***An injunction against Uber would not violate the Anti-Injunction Act.*** The Anti-Injunction Act states that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. §2283. The statute recognizes the "fundamental constitutional independence of the States and their courts" and the need "to prevent needless friction" between them and the federal courts. *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970). But the exceptions provided in the Act recognize that sometimes federal court orders can, in appropriate circumstances, enjoin state court proceedings.

One of those appropriate circumstances is this situation here: when parallel state proceedings would frustrate an order compelling arbitration. In some cases, the court recognizes that the stay is necessary to aid the federal court's jurisdiction over the motion to compel (so that it is not frustrated by conflicting state court proceedings). *See, e.g.*, *Cent. Reserve Life Ins. Co.*, 211 F.R.D. at 451 ("Here, the Plaintiff is still a third-party defendant in the parallel state court action and any decision made in state court has the possibility of interfering with this Court's continuing jurisdiction over the order to compel arbitration."). In others, the stay is viewed as necessary "to protect or effectuate its judgment [such as] the district court's determination that the [arbitrable] claims … be arbitrated rather than adjudicated in state court. *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 391 n.3 (5th Cir. 2006). Citing one (or both) of these exceptions, courts—including courts in this Circuit—frequently reject §2283 objections to injunctions against pending state court actions in this very context. *See, e.g.*, *CarMax*, 94 F. Supp. 3d at 1127 (collecting cases); *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1109 (9th Cir. 2002) (affirming the district court's order compelling arbitration and staying state court proceedings); *Great Earth*, 288 F.3d at 894; *In re Arb. Between Nuclear Elec. Ins. Ltd. and Cent. Power & Light Co.*, 926 F. Supp. 428, 436 (S.D.N.Y. 1996) ("The courts in this district have consistently held that a stay, when issued subsequent to or in conjunction with an order compelling arbitration concerning the same subject matter as the state-court proceeding, falls within one or both of" the exceptions.); *TranSouth Fin. Corp. v. Bell*, 149 F.3d 1292, 1297 (11th Cir. 1998) ("When a federal court has ordered arbitration, a stay of the state-court action may be necessary to insure that the federal court has the opportunity to pass on the validity of the arbitration award.").

As the court in *Specialty Bakeries* noted, neither "a contracting party or a state court may act in any way to undercut that policy, where as here a federal court order compelling arbitration has been issued." 961 F. Supp. at 830. Under such circumstances, an injunction is necessary "to preserve the integrity of this arbitration process." *Id.* Otherwise, the state court case "would eviscerate the arbitration process and make it a 'hollow formality,' with needless expense to all concerned." *Ins. Newsnet.com*, 2011 WL 3423081, at *4 (quoting *Specialty Bakeries*, 961 F. Supp. at 830). The Anti-Injunction Act thus poses no obstacle to Petitioners' requested relief.

### C.  This Court Should Grant Petitioners Relief Under Cal. Civ. Pro. §§1281.98 and 1281.99.

In this case, Uber drafted an arbitration agreement, imposed it upon Petitioners, and is now preventing Petitioners' claims from moving forward by balking at paying the AAA fees that it selected, incorporated into its agreement, and promised to pay. The California Legislature has recognized that large companies often engage in such a bait-and-switch by prohibiting consumers from vindicating their rights in court while also stymieing their attempts to arbitrate their disputes. It thus enacted Cal. Civ. Pro. §1281.98, which gives consumers options when faced with such obstructive behavior.

Specifically, §1281.98(a) declares that:

> In [a] consumer arbitration that requires, either expressly or through application of … the rules of the arbitration provider, that the drafting party pay certain fees and costs during the pendency of an arbitration proceeding, if the fees or costs required to continue the arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel the employee or consumer to proceed with that arbitration as a result of the material breach.

*Id.* Moreover, "[i]f the drafting party materially breaches the arbitration agreement and is in default under subdivision (a)," the statute gives the consumer several remedies that it "may unilaterally elect." *Id.* §1281.98(b). One of those remedies is to "[p]etition the court for an order compelling the drafting party to pay all arbitration fees that the drafting party is obligated to pay under the arbitration agreement or the rules of the arbitration company." *Id.* §1281.98(b)(3).

Petitioners are entitled to that remedy here. AAA notified Uber in April 2021—after Uber had paid the case filing fees—that it intended to invoice Uber under the agreement for the case management fees for Petitioners once the initial batch of arbitrators had been assigned. McCarthy Decl., Ex. G. And when it sent that invoice in September, AAA specifically noted "these arbitrations are subject to California Code of Civil Procedure 1281.97 and 1281.98," that "payment must be received within 60 days of the date of this letter," and that "AAA will not grant any extensions to this payment deadline." *Id.* Ex. K. Rather than pay that fee, Uber went to court in New York. The 60 days passed without payment being made on Petitioners' cases. And AAA's

letter confirms that this failure to pay is a breach of the agreement under §1281.98. Without action by this Court, Petitioners' arbitrations cannot move forward.

This situation is exactly what §1281.98 was designed to remedy. The legislative history confirms that the Legislature was targeting "a concerning and troubling trend [that] has arisen in arbitration: employers are refusing to pay required fees to initiate arbitration, effectively stymieing the ability of employees to assert their legal rights." S. Judiciary Comm. Hr'g on SB 707, 2019–2020, at 6 (Cal. Apr. 23, 2019). And the Senate Bill Policy Committee Analysis called out Uber by name, noting that "by refusing to pay the arbitration costs and fees as required by law, Uber and other similarly situated companies are managing to delay the adjudication of claims and postpone the payment of any potential judgments against the company in the name of a process that is supposed to be cheaper and easier for the parties." S. Judiciary Comm. Hr'g on SB 707, 2019–2020, at 7 (Cal. June 18, 2019). As one court in this district has recognized that the legislation was designed to end a "perverse incentive scheme"—whereby companies like Uber "an incentive to refuse to arbitrate claims … in the hope that the frustrated employees and consumers would simply abandon them." *Dekker v. Vivint Solar, Inc.*, 479 F. Supp. 3d 834, 839 (N.D. Cal. 2020).[2] And at least two other federal courts in California have enforced this statutory scheme against parties that drafted arbitration agreements. *See Agerkop v. Sisyphian LLC*, 2021 WL 1940456, at *4 (C.D. Cal.); *Hagan v. Park Miller LLC*, 2021 WL 1688347, at *1 (N.D. Cal.).

In addition to the order authorized by §1281.98(b)(3), California law also entitles Petitioners to the fees and costs associated with this motion. Cal. Civ. Pro. §1281.99(a) *requires* the Court to "impose a monetary sanction against a drafting party that materially breaches an

---

[2] *Dekker* was reversed on appeal because the question of breach and been delegated to the arbitrator, and therefore the district court erred in reversing its prior order compelling arbitration. But unlike the arbitrator there, in this case AAA already has determined that failure to pay would constitute a material breach of the agreement. *See* McCarthy Decl., Ex. K. Moreover, Uber's refusal to pay AAA's fees is preventing arbitrators from being appointed at all—which is why the California Legislature enacted remedies to compel recalcitrant companies to pay the required fees. It would be absurd if Uber could frustrate that right by not making the payment, thereby preventing the appointment of individual arbitrators, and then argue that the question of payment must be made by those same not-yet-appointed arbitrators.

arbitration agreement pursuant to … subdivision (a) of Section 1281.98, by ordering the drafting party to pay the reasonable expenses, including attorney's fees and costs, incurred by the employee or consumer as a result of the material breach." *Id.*; *see also Hagan*, 2021 WL 1688347, at *2 (noting that "section 1281.99's additional remedy applies to violations under section 1281.98(a)"). Petitioners will timely submit a request for these fees and expenses if the Court grants its requested relief.

## **CONCLUSION**

For the reasons stated, Petitioners respectfully request that this Court (1) Order Uber to pay the AAA's required fees and take any other steps required by AAA to initiate arbitration of Petitioners' claims in the manner provided for by the Agreement; (2) order Uber to withdraw its pending case in *Uber Techs., Inc. v. Am. Arbitration Ass'n, Inc.*, No. 655549/2021 (N.Y. Sup. Ct.) and refrain from any further attempts to avoid arbitration; (3) Declare Uber to be in material breach of its obligation to pay the required fees, as already determined by the AAA, and order Uber to pay arbitration fees as required by Cal. Civ. Pro. §1281.98(b)(3); (4) Award Petitioners relief under Cal. Civ. Pro. §1281.99, including attorney fees and costs and terminating sanctions; and (5) award such other and further relief as the Court deems just and proper.

1

2 Dated: January 5, 2022                    Respectfully submitted,

3                                            _/s/ Bryan Weir_____
4                                            Bryan Weir (#310964)
                                             bryan@consovoymccarthy.com
5                                            Thomas R. McCarthy
                                                (*pro hac vice forthcoming*)
6                                                tom@consovoymccarthy.com
7                                            CONSOVOY MCCARTHY PLLC
                                             1600 Wilson Boulevard, Suite 700
8                                            Arlington, VA 22209
                                             (703) 243-9423
9
10                                           Patrick Strawbridge
                                                (*pro hac vice forthcoming*)
11                                               patrick@consovoymccarthy.com
                                             CONSOVOY MCCARTHY PLLC
12                                           Ten Post Office Square
                                             8th Floor South PMB #706
13                                           Boston, Massachusetts 02109
                                             (617) 227-0548
14
15                                           Bradley A. Benbrook (#177786)
                                                brad@benbrooklawgroup.com
16                                           BENBROOK LAW GROUP PC
                                             701 University Avenue, Suite 106
17                                           Sacramento, CA 95825
                                             (916) 447-4900
18
19                                           *Counsel for Petitioners*

20

21

22

23

24

25

26

27

28

MOTION TO COMPEL ARBITRATION, TO STAY PARALLEL PROCEEDINGS, AND
FOR OTHER RELIEF   CASE NO: 3:21-cv-09577