1   Laurie Edelstein (Bar No. 164466)
    Sophia Cai (Bar No. 327773)
2   JENNER & BLOCK LLP
    455 Market Street, Suite 2100
3   San Francisco, California 94105
    Telephone:  (628) 267-6800
4   Facsimile:   (628) 267-6859
    ledelstein@jenner.com
5   scai@jenner.com

6   Adam Unikowsky (admitted *pro hac vice*)
    JENNER & BLOCK LLP
7   1099 New York Ave., NW
    Washington, DC 20001
8   Telephone:  (202) 639-6041
    Facsimile:   (202) 661-4925
9   aunikowsky@jenner.com

10  *Attorneys for Respondents*
    *Uber Technologies, Inc. and Uber USA, LLC*

11

12              **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14                **SAN FRANCISCO DIVISION**

15

16  VALERIA HERMOSILLO CHAVEZ,          )   No. 3:21-cv-09577 (RS)
    ERIK ESPARZA, JAMAR SMITH, and      )
17  ANTHONY SIMONEAU, and 7,267 OTHER   )   **RESPONDENTS' NOTICE OF**
    INDIVIDUALS,                        )   **MOTION AND MOTION TO**
18                                      )   **DISMISS PETITION FOR AN**
                                        )   **ORDER COMPELLING**
19              Petitioners,            )   **ARBITRATION AND OPPOSITION**
                                        )   **TO MOTION TO COMPEL**
20        v.                            )   **ARBITRATION**
                                        )
21  UBER TECHNOLOGIES, INC. AND UBER    )   Date:      March 10, 2022
    USA, LLC                            )   Time:      1:30 p.m.
22                                      )   Place:     Courtroom 3 – 17th Floor
                                        )   Judge:     Hon. Richard Seeborg
23              Respondents.            )
    _____ )

24

25

26

27

28

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

1

**NOTICE OF MOTION AND MOTION**

2

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3

**PLEASE TAKE NOTICE** that on March 10, 2022, at 1:30 p.m., or as soon thereafter as

4 this matter may be heard before the Honorable Richard Seeborg in Courtroom 3, 17th Floor of

5 the United States District Court for the Northern District of California, Phillip Burton Federal

6 Building and United States Courthouse, 450 Golden Gate Avenue, San Francisco, California

7 94102, respondents Uber Technologies, Inc. and Uber USA, LLC, by and through their counsel

8 of record, will and hereby do respectfully move this Court to dismiss Petitioners' Petition for an

9 Order Compelling Arbitration.

10

Petitioners seek an order under Section 4 of the Federal Arbitration Act compelling Uber

11 to pay over $10 million to AAA and enjoining a pending New York case. The petition should be

12 dismissed because Section 4 of the FAA requires Petitioners to show that Uber is resisting

13 arbitration, and Uber is not. Uber fully intends to arbitrate every single one of Petitioners'

14 claims. Petitioners have no interest in the outcome of Uber's state court suit against AAA, which

15 seeks to resolve a separate commercial dispute over the amount of AAA's invoice. Furthermore,

16 the FAA does not authorize Petitioners' requested relief. Basic principles of federalism require

17 this Court to allow the New York court to complete its work rather than overriding a pending

18 case between Uber and a third party. If the Court reaches the merits, it should hold that Uber

19 does not owe the AAA $10 million. Finally, Petitioners are not entitled to relief because they

20 have failed to provide any individualized evidence to support their claims.

21

This motion is based on the memorandum set forth below, any reply defendants may

22 make, such other evidence and argument as may be presented at or prior to the hearing, and all

23 records and files in this action.

24 Dated:  January 31, 2022                                 JENNER & BLOCK LLP

25                                                          By:  */s/  Laurie Edelstein*

26                                                          *Attorneys for Respondents*
                                                            *Uber Technologies, Inc. and Uber USA, LLC*

27

28

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

1

**TABLE OF CONTENTS**

2

**Page**

3

INTRODUCTION ........................................................................................................ 1

4

STATEMENT OF ISSUES TO BE DECIDED ......................................................... 3

5

STATEMENT OF FACTS .......................................................................................... 4

6

ARGUMENT ............................................................................................................... 7

7

I.      THE PETITION SHOULD BE DISMISSED BECAUSE UBER HAS
        AGREED – NOT REFUSED – TO ARBITRATE PETITIONERS' CLAIMS.............. 7

8

9

II.     THE COURT IS NOT AUTHORIZED TO GRANT PETITIONERS'
        REQUESTED RELIEF...................................................................................... 9

10

        A.      The Court Does Not Have the Authority to Enjoin the State Court
                Case.................................................................................................. 10

11

12

                1.      The FAA does not permit the Court to enjoin the state court
                        case........................................................................................ 10

13

                2.      The Anti-Injunction Act bars Petitioners' requested relief....................... 11

14

        B.      The Court Should Not Order Uber To Pay the Invoice. ......................... 14

15

                1.      Petitioners' requested order would violate the Anti-Injunction
                        Act........................................................................................ 14

16

17

                2.      If the Court does not dismiss, it should abstain. ..................................... 15

                3.      If the Court reaches the merits, Uber should win. ................................... 16

18

19

                        a.      The Court should not blindly defer to AAA's invoice. ............... 17

20

                        b.      AAA's invoice violates AAA's rules and is unlawful.................. 18

21

III.    PETITIONERS HAVE NOT SUBSTANTIATED THEIR CLAIMS. ........................... 19

22

IV.     PETITIONERS CANNOT OBTAIN RELIEF UNDER STATE LAW.......................... 21

        A.      The California statutes do not apply by their own terms. ...................... 21

23

24

        B.      The California statutes do not apply in federal court............................ 22

                1.      The California statutes are procedural. ................................................. 23

25

                2.      Even if they are substantive, California's laws still do not
                        apply...................................................................................... 24

26

27

CONCLUSION.......................................................................................................... 25

28

**JENNER & BLOCK LLP**
455 Market Street, Suite 2100
San Francisco, CA 94105

1

**TABLE OF AUTHORITIES**

2

Page(s)

3

**Cases**

4

*A.L. Williams & Assocs., Inc. v. McMahon*,
  697 F. Supp. 488 (N.D. Ga. 1988) .......................................................................................10

5

6

*Abadilla v. Uber Techs., Inc.*,
  No. 3:18-cv-7343 (N.D. Cal. Jan 14, 2019)..........................................................................11

7

*Allemeier v. Zyppah, Inc.*,
  No. CV 18-7437, 2018 WL 6038340 (C.D. Cal. Sept. 21, 2018)..........................................17

8

9

*Ass'n of Am. Med. Colls. v. United States*,
  217 F.3d 770 (9th Cir. 2000) .................................................................................................20

10

11

*Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*,
  398 U.S. 281 (1970)................................................................................................................11

12

13

*Barbes Rest. Inc. v. ASRR Suzer 218, LLC*,
  140 A.D.3d 430 (1st Dep't 2016) ..........................................................................................18

14

*Bell v. Hood*,
  327 U.S. 678 (1946).................................................................................................................20

15

16

*Blalock Eddy Ranch v. MCI Telecomms. Corp.*,
  982 F.2d 371 (9th Cir. 1992) ..................................................................................................14

17

18

*Chick Kam Choo v. Exxon Corp.*,
  486 U.S. 140 (1988) ................................................................................................................13

19

*Circuit City Stores, Inc. v. Najd*,
  294 F.3d 1104 (9th Cir. 2002) .................................................................................................13

20

21

*Colo. River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976)................................................................................................................15

22

23

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)................................................................................................................23

24

*Dekker v. Vivint Solar, Inc.*,
  479 F. Supp. 3d 834 (N.D. Cal. 2020) ...................................................................................24

25

26

*Erie R.R. Co. v. Tompkins*,
  304 U.S. 64 (1938)..................................................................................................................22

27

*G.C. & K.B. Invs., Inc. v. Wilson*,
  326 F.3d 1096 (9th Cir. 2003) ........................................................................................13, 14

28

**JENNER & BLOCK LLP**
455 Market Street, Suite 2100
San Francisco, CA 94105

*Geographic Expeditions Inc. v. Est. of Jason Lhotka*,
  No. C 08-04624 SI, 2010 WL 3516116 (N.D. Cal. Sept. 8, 2010) ........................13

*Hopper, MD v. Am. Arb. Ass'n, Inc.*,
  708 F. App'x 373 (9th Cir. 2017) .........................................................18

*Jolly v. Intuit Inc.*,
  485 F. Supp. 3d 1191 (N.D. Cal. 2020) ...............................................8, 20

*Kag West, LLC v. Malone*,
  No. 15-cv-03827, 2016 WL 3951651 (N.D. Cal. July 22, 2016) ..................13, 14

*Kaiser v. BMW of N. Am., LLC*,
  No. C 12-01311, 2013 WL 100218 (N.D. Cal. Jan. 7, 2013) ..........................18

*Leeson v. Transam. Disability Income Plan*,
  671 F.3d 969 (9th Cir. 2012) ...............................................................20

*Montanore Mins. Corp. v. Bakie*,
  867 F.3d 1160 (9th Cir. 2017) ........................................................15, 16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ................................................................................16

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  523 F.3d 1091 (9th Cir. 2008) .......................................................12, 14

*Nordeman v. Dish Network LLC*,
  525 F. Supp. 3d 1080 (N.D. Cal. 2021) ...............................................20

*PaineWebber Inc. v. Faragalli*,
  61 F.3d 1063 (3d Cir. 1995) ...........................................................7, 9

*Quackenbush v. Allstate Ins. Co.*,
  121 F.3d 1372 (9th Cir. 1997) ......................................................11, 13

*Sandpiper Vill. Condo. Ass'n., Inc. v. La.-Pac. Corp.*,
  428 F.3d 831 (9th Cir. 2005) ...............................................................13

*Sibbach v. Wilson & Co.*,
  312 U.S. 1 (1941) ................................................................................24

*Vaden v. Discover Bank*,
  556 U.S. 49 (2009) .....................................................................20, 24, 25

*Wayans v. BMW of N. Am., LLC*,
  No. CV 19-7319, 2020 WL 2046392 (C.D. Cal. Jan. 7, 2020) ......................23

**JENNER & BLOCK LLP**
**455 Market Street, Suite 2100**
**San Francisco, CA 94105**

**JENNER & BLOCK LLP**
**455 Market Street, Suite 2100**
**San Francisco, CA 94105**

**Statutes**

9 U.S.C. § 4 ................................................................................................................ *passim*

22 U.S.C. § 2283 .................................................................................................................11

28 U.S.C. § 1367 .................................................................................................................24

42 U.S.C. § 1981 ...............................................................................................4, 20, 24, 25

Cal. Civ. Proc. Code § 1281.2 .............................................................................................23

Cal. Civ. Proc. Code § 1281.97 ....................................................................................23, 24

Cal. Civ. Proc. Code § 1281.98 ......................................................................21, 22, 23, 24

Cal. Civ. Proc. Code § 1281.99 ..............................................................................21, 22, 23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

**INTRODUCTION**

Petitioners ask this Court to enjoin a pending New York state court appeal, which is on an expedited track following the entry of interim relief to Uber, in order to force Uber to pay over $10 million that Uber does not owe, while providing zero individualized evidence that they are entitled to any relief.  This audacious request should be denied.

In 2020, following George Floyd's murder, Uber temporarily waived certain of its own delivery fees on the Uber Eats platform for food purchased from small- and medium-sized Black-owned restaurants.  In response, Consovoy McCarthy PLLC ("Consovoy") solicited clients on social media to sue Uber.  Following its advertising campaign, Consovoy filed more than 31,000 boilerplate arbitration demands with the American Arbitration Association ("AAA").  The claimants all alleged that, during Uber's promotion, they were charged delivery fees on orders from non-Black-owned restaurants, purportedly violating their civil rights.

This claim is riddled with legal defects—but Consovoy gambled that no arbitrator would ever decide it.  Uber's arbitration agreement requires Uber to pay arbitration fees in the first instance.  AAA's standard fee schedule sets forth fees on a per-case basis.  If AAA multiplied its standard per-case fees by the total number of boilerplate arbitrations, and ignored its own express commitments to charge reasonable fees to compensate for actual costs, then Uber's total bill would exceed $100 million.  Consovoy's strategy hinged on two predictions: AAA would mechanically charge its per-case fees for all 31,000+ arbitrations and demand that Uber pay a staggering amount, and Uber would buckle and pay Consovoy a multi-million dollar settlement in lieu of paying an even higher amount to AAA.

Consovoy got the first prediction mostly right, but the second wrong.  AAA discounted its filing fees in recognition of the efficiencies in administering boilerplate claims, but stated its intention to stick to its standard case management and arbitrator fees.  This would yield a bill exceeding $90 million, notwithstanding AAA's contractual obligation to charge only a reasonable fee.  But Uber did not buckle and has underscored that it is ready to arbitrate all 31,000+ claims.  Uber paid AAA's filing fee for every single claimant.  Uber has also paid all of

---

RESPONDENTS' MOTION TO DISMISS AND OPPOSITION
TO MOTION TO COMPEL ARBITRATION

No. 3:21-cv-09577 (RS)

AAA's fees (reduced filing fees, as well as non-reduced case management fees and arbitrator fees) for nearly 1,000 claimants, and those arbitrations are moving forward without delay.

This case concerns one fee for a subset of Consovoy's clients. Petitioners are 7,271 of the 31,000+ claimants. Uber has paid filing fees in full for all 7,271 Petitioners. But AAA has now sent Uber a separate invoice for over $10 million in undiscounted case management fees for those same Petitioners, and has also made known that it will eventually invoice Uber for undiscounted case management fees for all 31,000+ claimants.

AAA's invoice is unlawful for several reasons, and to obtain relief from that invoice, Uber immediately sued AAA in New York state court. In those expedited proceedings, Uber made clear that its goal was *not* to avoid arbitration, but to ensure that the arbitrations would occur without AAA illegally obtaining a massive windfall. To that end, Uber immediately offered to place the invoice amount in escrow and to pay amounts necessary to continue the arbitrations. Certain Petitioners sought to intervene in the state court suit, but the state court denied intervention, concluding they will arbitrate their claims no matter what and they have no interest in how much Uber pays AAA. Petitioners were, however, permitted to be heard as amici, and they did not appeal the court's intervention decision.

After the New York trial court denied Uber's motion for a preliminary injunction, Uber promptly filed an emergency appeal. Following argument before a single justice, the appellate court granted Uber's motion for injunction pending appeal and temporarily delayed the payment deadline for AAA's massive invoice, subject to Uber's payment of $700,000 to continue the arbitrations, which Uber immediately paid. That interim relief was subsequently affirmed by a five-justice panel on the same terms. Pursuant to the court's order, Uber has perfected the appeal on an expedited basis for March 2022.

Consovoy is now concerned that Uber might win the New York suit, which could reduce the fee Uber owes AAA and hence reduce Consovoy's leverage in extorting a settlement. Consequently, Petitioners have now submitted a filing styled as a "petition to compel arbitration," asking this Court to enjoin the New York suit and order Uber to pay the $10 million.

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

The petition should be dismissed for several reasons.  First, Uber is not refusing to arbitrate.  Petitioners invoke Section 4 of the FAA, which permits a court to compel arbitration when a litigant refuses to arbitrate.  Here, however, Uber fully intends to arbitrate every single case and has paid filing fees for every single one of Petitioners' cases, plus $700,000 in additional fees to cover the costs of continuing the proceedings as the New York court directed.

Second, Petitioners are not entitled to the relief they seek.  Principles of federalism require that the Court defer to the New York case rather than enjoin that case and nullify the injunction currently in effect.  Alternatively, if the Court reaches the merits, Uber should win. AAA's $10 million invoice is unlawful and invalid, so Uber should not be ordered to pay it.

Third, at a minimum, the Court should deny relief to Petitioners until they provide evidence.  Petitioners allege that they paid Uber Eats delivery fees during Uber's initiative to support Black-owned restaurants.  However, Uber has strong reasons to believe that numerous Petitioners did not pay delivery fees during the initiative, and in some cases, did not even have Uber Eats accounts at all.  Petitioners should not obtain a court order forcing Uber to pay over $10 million until Petitioners provide evidence that they are entitled to that court order.

Petitioners also seek relief under California law, but the California statute at issue does not apply on its own terms and does not apply in federal court at all.  Petitioners' motion should be denied and the petition dismissed.

## STATEMENT OF ISSUES TO BE DECIDED

1.   Whether the Court should issue an order under Section 4 of the FAA when Uber has not refused to arbitrate.

2.   Whether the Court should enjoin pending state court litigation when the FAA does not authorize such relief and the Anti-Injunction Act bars it.

3.   Whether the Court should order Uber to pay an invoice of over $10 million even though Uber does not owe that amount and a state court is currently considering that very dispute.

4.   Whether the Court should grant Petitioners' requested relief even though Petitioners have provided no evidence to support the allegations in the Petition.

1     5.   Whether a California procedural remedy applies in federal court.

2                             **STATEMENT OF FACTS**

3 Uber is a technology company that connects consumers with goods and services.  Uber's

4 "Uber Eats" marketplace allows end users, or "Eaters," to order food delivery from restaurants.

5 All Eaters who open Uber Eats accounts enter into arbitration agreements with Uber.

6 Pet., Ex. A (ECF No. 4-2).  Under the applicable arbitration agreement, Uber agrees to pay AAA

7 filing, administrative, and arbitrator fees in the first instance for claims that do not exceed

8 $75,000.  *Id.* at 5.  At all times relevant to this petition, the arbitration clause designated AAA as

9 the parties' arbitration service provider.  *Id.* at 4.

10 Following the murder of George Floyd in May 2020, Uber implemented a program from

11 June 4 through December 31, 2020 to support small- and medium-sized Black-owned restaurants

12 on its Uber Eats platform by waiving delivery fees paid by Eaters for orders that they placed at

13 those restaurants.  *See* Edelstein Decl., Ex. 1 ¶ 15.  In response, Consovoy put up ads on social

14 media platforms luring Eaters as clients with the prospect of suing Uber for "reverse

15 discrimination" and obtaining statutory damages.  In late 2020, Consovoy filed over 31,000

16 materially identical arbitration demands with AAA on behalf of Eaters, alleging that Uber had

17 violated the Eaters' rights under 42 U.S.C. § 1981 and California's Unruh Act.  *Id.* ¶ 17.

18 AAA's Rules contain a fee schedule for individual cases, consisting of three categories:

19 filing fees, case management fees, and arbitrator compensation.  *See* McCarthy Decl., Ex. B at

20 33-34 (ECF No. 14-2).  AAA's Rules also incorporate a Due Process Protocol which requires

21 AAA to charge "reasonable costs" that are "rational, equitable, and consistent."  Edelstein Decl.,

22 Ex. 2 at 17, Principle 6.

23 After Consovoy filed its arbitration demands, AAA invoiced Uber for filing fees for all of

24 the cases.  If AAA multiplied its ordinary filing fee ($500) by the number of arbitrations, the

25 filing fee would have exceeded $15,000,000.  But AAA did not do this.  Instead, on November 1,

26 2020, in recognition of the efficiencies of administering large numbers of boilerplate claims,

27 AAA exercised its discretion and promulgated a revised set of filing fees for mass arbitrations.

28 Edelstein Decl., Ex. 3 ¶ 27.  AAA applied that fee schedule to all of Consovoy's claims,

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

---

RESPONDENTS' MOTION TO DISMISS AND OPPOSITION
TO MOTION TO COMPEL ARBITRATION                 No. 3:21-cv-09577 (RS)

1    including thousands that were filed before the new fee schedule took effect.  Under the new fee

2    schedule, AAA charged Uber $4,346,625, reflecting a 72% discount from the ordinary filing fee.

3    McCarthy Decl., Ex. C at 2 (ECF No. 14-3).  Uber promptly paid that fee.  *See* Edelstein Decl.,

4    Ex. 1 ¶ 20.

5           AAA then unilaterally divided the arbitration demands into five "tranches," the first

6    consisting of 477 cases and the second four consisting of 7,771 cases each.  AAA has at most

7    750 qualified available arbitrators, which means that each arbitrator would hear at least 40 cases

8    on average.  Edelstein Decl., Ex. 4 at 4.  Nonetheless, AAA decided it would invoice Uber for

9    the full $1,400 case management fee, as well as the full $1,500 arbitrator fee, for every single

10   arbitration.  In other words, even if the same arbitrator would hear the identical case based on

11   identical briefs and issue identical awards 40 times, Uber would pay the full case management

12   fee and full arbitrator fee multiplied by 40.  This would result in a total bill exceeding $90

13   million.  *See* Edelstein Decl., Ex. 5 at 79:18-22.

14          In Uber's view, this is a grossly unreasonable position that would result in a massive

15   windfall for AAA and would violate AAA's contractual and statutory obligations toward Uber.

16   For the first tranche of arbitrations, Uber attempted to pay these fees under protest to ensure it

17   protects its rights to object, but AAA rejected that approach, and Uber thus elected to pay all fees

18   and waive its objections.  Edelstein Decl., Ex. 6 at 1; Edelstein Decl., Ex. 7 at 1.  Those

19   arbitrations have gone forward without delay.  *See* McCarthy Decl., Ex. H at 1 (ECF No. 14-8).

20          The second tranche consists of 7,771 individuals.  On September 14, 2021, AAA issued

21   an invoice demanding $10,879,400 in case management fees for this tranche.  Pet., Ex. C (ECF

22   No. 4-4).  Uber intends to arbitrate all claims in the second tranche, but it is not willing to pay an

23   illegal fee while waiving all objections to that fee.  Thus, Uber sued AAA in New York, where

24   AAA is headquartered and incorporated as a not-for-profit, and sought a preliminary injunction.

25          Uber's suit did not seek to stop the arbitrations.  Uber's motion for preliminary injunction

26   stated this clearly: "Uber has no desire to undermine or delay these arbitrations; it seeks only to

27   pay the reasonable fees it contracted to pay."  Pet., Ex. E at 9 (ECF No. 4-6).  And from day one,

28   Uber proposed to place the entire invoice amount in escrow to demonstrate there was "no

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

---

RESPONDENTS' MOTION TO DISMISS AND OPPOSITION
TO MOTION TO COMPEL ARBITRATION

No. 3:21-cv-09577 (RS)

question it will pay whatever amount the court determines is appropriate." *Id.*  Instead, Uber

sought a declaration that the AAA must comply with its contractual and statutory obligations to

impose reasonable fees. *Id.* at 16.  To ensure that its suit would not interfere with the

arbitrations, Uber moved for a preliminary injunction, seeking to extend the payment deadline

and to prohibit closure of the arbitration files while Uber pursued its claims against AAA.

Consovoy, on behalf of four individual claimants, sought to intervene.  The state court

denied this motion, reasoning that Uber would arbitrate no matter what and Consovoy had no

interest in how much Uber paid AAA for the ability to do so.  Pet., Ex. H (ECF No. 4-9).

However, the court allowed Petitioners to file an amicus brief (which they did), and Petitioners

did not appeal the denial of their motion to intervene.

The New York trial court promptly held an evidentiary hearing and heard testimony.  An

AAA Vice President, Neil Currie, testified that there were numerous efficiencies inherent in the

mass arbitration context, and he could not offer evidence that AAA's fees reflected AAA's costs.

He also acknowledged that AAA did not take those efficiencies into account even though it

"always" retains discretion to adjust fees.  Edelstein Decl., Ex. 8 at 10-11.  Nonetheless, the trial

court denied Uber's motion for a preliminary injunction.[1]

Uber appealed and filed a motion for an injunction pending appeal.  The appellate court

granted the motion.  Specifically, the court enjoined AAA's threatened closure of the

arbitrations.  Pet., Ex. J at 3 (ECF No. 4-11).  It also stayed the payment deadline contingent on

Uber paying $700,000 to AAA.  *Id.*

AAA has never disputed that $700,000 is sufficient to cover AAA's actual and

reasonable case management costs for the second tranche.  Nevertheless, AAA stuck to its

$1,400-per-case fee schedule and applied this $700,000 payment to cover case management fees

for only 500 additional claimants.  Pet., Ex. K at 1 (ECF No. 4-12).  AAA has since invoiced

Uber for arbitrator fees for those 500 individuals, and Uber has paid this invoice.  *See id.*

---

[1] As explained in Uber's New York appellate brief, Edelstein Decl., Ex. 9. the trial court
seriously erred.  The court myopically focused on AAA's fee schedule while ignoring AAA's
contractual promises and three of Uber's claims.  Further, the court ignored the irreparable harm
to Uber and wrongly denied relief despite the absence of any prejudice to AAA.

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

1    Petitioners are the remaining 7,271 individuals in the second tranche.  They seek an order

2    enjoining the New York suit and forcing Uber to pay the entire case management fee invoice.

3                                        **ARGUMENT**

4    **I.    THE PETITION SHOULD BE DISMISSED BECAUSE UBER HAS AGREED –
           NOT REFUSED – TO ARBITRATE PETITIONERS' CLAIMS.**

5           Section 4 of the Federal Arbitration Act provides that "[a] party aggrieved by the alleged

6    failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may

7    move to compel "an order directing that such arbitration proceed in the manner provided for in

8    such agreement."  9 U.S.C. § 4.  Thus, to obtain relief under the FAA, Petitioners bear the

9    burden of proving Uber's "failure, neglect, or refusal" to arbitrate their claims.  *Id.*  "[U]nless

10   and until an adverse party has refused to arbitrate a dispute putatively governed by a contractual

11   arbitration clause, … the petitioner cannot claim to be 'aggrieved' under the FAA."

12   *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1067 (3d Cir. 1995).

13          To satisfy the FAA's "failure, neglect, or refusal" requirement, Petitioners must show

14   that Uber "unequivocally refused to arbitrate."  *Id*.  The Petition should be dismissed because

15   Uber has not "unequivocally refused to arbitrate" with Petitioners.

16          To the contrary, Uber's actions demonstrate that Uber *has agreed* and *wants* to arbitrate.

17   After Consovoy served arbitration demands for 31,000+ claimants, Uber paid AAA's filing fees

18   for every claimant in full.  Moreover, for the first tranche of 477 claimants, Uber paid all of

19   AAA's invoices—filing fees, case management fees, and arbitrator fees—in full.  Those

20   arbitrations are underway without delay.

21          The second tranche is composed of 7,771 claimants.  Petitioners (7,271 individuals) are

22   within the second tranche.  As noted above, Uber paid AAA's filing fees with respect to all 7,271

23   Petitioners.  Uber's dispute with AAA concerns AAA's separate invoice for over $10 million in

24   case management fees.  Uber is prepared to pay *reasonable* case management fees for every

25   Petitioner, but Uber believes that the invoice for over $10 million is unlawful and invalid.

26          Petitioners insist that Uber should be required to *immediately* pay AAA's full invoice, no

27   questions asked.  But if Uber paid those fees, Uber would likely permanently be stripped of the

28

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

right to have any hearing over the invoice's legality.  AAA has refused to accept case management fees unless Uber waives any objection to those fees.  Uber initially proposed to pay case management fees under protest, so that arbitrations could occur, and Uber and AAA could then resolve their independent dispute over the fee amount on a separate track, but AAA refused this offer.  Edelstein Decl., Ex. 6 at 1; Edelstein Decl., Ex. 7 at 2.  Hence, if Uber pays the case management fees, Uber faces the risk of obtaining no hearing and being unable to recover the payment.

To obtain such a hearing, Uber sued AAA in New York.  Uber's lawsuit is not intended to avoid arbitration.  *Win or lose the lawsuit, Uber will arbitrate the claims of every single Petitioner.*  Uber's lawsuit is intended to ensure that AAA comply with its legal duties and impose reasonable fees.  Uber stated as much in its motion for a preliminary injunction: "Uber has no desire to undermine or delay these arbitrations; it seeks only to pay the reasonable fees it contracted to pay."  Pet., Ex. E at 9 (ECF No. 4-6).  Uber is willing to pay reasonable fees, but it is not willing to pay unlawful fees while losing any opportunity to contest those fees.

Petitioners claim that Uber is refusing to arbitrate in accordance with the arbitration agreement.  To the contrary, Uber's goal *is* to arbitrate in accordance with the arbitration agreement.  One of Uber's arguments in the New York suit is that AAA's Consumer Rules and Consumer Due Process Protocol bar AAA from issuing its over $10 million invoice, and that AAA has therefore violated its contractual obligations toward Uber.  *Id.* at 19-20.  AAA's Consumer Rules and Consumer Due Process Protocol are also incorporated into Petitioners' arbitration agreements with Uber.  Hence, Uber's suit, if successful, would ensure that AAA follows the rules that Petitioners' arbitration agreement requires AAA to follow.  Because Uber is not resisting arbitration but is instead merely "asking the state court to provide interpretative aid regarding how the arbitration should proceed," it is not refusing arbitration under the FAA.  *Jolly v. Intuit Inc.*, 485 F. Supp. 3d 1191, 1207 (N.D. Cal. 2020).

Petitioners complain that the New York injunction is delaying their arbitrations, but that delay reflects AAA's intransigence, not Uber's refusal to arbitrate.  Uber requested—and the New York appellate court granted—an injunction that barred AAA from closing the second

tranche of arbitrations, as AAA had threatened.  Uber's successful request to *prevent* AAA from closing Petitioners' arbitrations does not show that Uber is *resisting* arbitration.

Uber also requested—and the New York appellate court granted—an injunction extending the payment deadline on AAA's invoice, contingent on Uber paying $700,000 for purposes of allowing the second tranche of arbitrations to move forward, which Uber immediately paid.  AAA has never disputed that this amount is sufficient to cover AAA's actual costs for the entire second tranche of arbitration (*i.e.*, all 7,771 claimants, including the 7,271 Petitioners).  This, again, shows that Uber is not resisting arbitration, but is instead trying to ensure that all of Petitioners' arbitrations occur without delay according to the terms of the agreement while Uber retains its opportunity to challenge AAA's fee.

Unfortunately, notwithstanding the New York injunction, AAA has unilaterally elected to stick to its $1,400-per-case fee schedule, and has assigned arbitrators for only 500 claimants in the second tranche ($700,000 divided by $1,400).  To attempt to ensure that all the arbitrations occur swiftly, Uber even offered during the New York litigation to put the entire disputed amount of $10.8 million in escrow, but still the AAA refuses to move forward.  This outcome is frustrating to both Petitioners and Uber, but is ultimately attributable to AAA's hardball negotiating tactics rather than any refusal by Uber to arbitrate.  Because Petitioners are not "aggrieved" by a "failure, neglect, or refusal" to arbitrate on Uber's part, *see PaineWebber*, 61 F.3d at 1067, they cannot invoke Section 4 of the FAA and the petition should be dismissed.

## II.   THE COURT IS NOT AUTHORIZED TO GRANT PETITIONERS' REQUESTED RELIEF.

The Petition should be denied for the additional reason that the Court lacks authority to grant Petitioners' requested relief.  The New York appellate court extended the payment deadline on AAA's invoice.  Dissatisfied with that decision, Petitioners now seek two extraordinary forms of relief.  First, they ask the Court to enjoin the New York case.  Second, they ask the Court to order Uber to pay the disputed invoice of over $10 million—which is exactly what the New York injunction temporarily halted.  The Court should not grant either form of relief.

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

**A.      The Court Does Not Have the Authority to Enjoin the State Court Case.**

The Court should deny Petitioners' request to enjoin the state court case.  The Court lacks authority under the FAA to issue such an order.  Moreover, the requested injunction would violate the Anti-Injunction Act.

**1.      The FAA does not permit the Court to enjoin the state court case.**

Section 4 of the Federal Arbitration Act provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may move to compel "an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  The Court lacks authority under Section 4 to enjoin the state court case.  Halting the New York suit would not compel arbitration.  To the contrary, Uber will arbitrate no matter what happens in the New York suit.  Rather, halting the New York suit would merely interfere with Uber's dispute with AAA over the financial terms of the arbitrations.

Petitioners cite a series of cases in which federal courts have enjoined state court proceedings under the FAA.  Mot. at 14-15 (ECF No. 13).  Each of those cases has a commonality: courts enjoined "state court proceedings that involve the very claims that are to be arbitrated."  *A.L. Williams & Assocs., Inc. v. McMahon*, 697 F. Supp. 488, 494 (N.D. Ga. 1988).  More specifically, in every cited case, the court compelled Party A to arbitrate claims against Party B and then enjoined Party A from litigating those exact claims against Party B in state court.  Those cases are far afield from this case, in which Uber's state court case is against a third party (AAA) and Uber will arbitrate against Petitioners no matter how that case comes out.

Apparently anticipating this objection, Petitioners contend that "Uber's New York suit challenging AAA's fees is fully arbitrable."  Mot. at 11-13 (ECF No. 13) (emphasis altered).  Petitioners' theory appears to be as follows: Uber agreed to arbitrate any disputes over AAA's rules *with Petitioners*, so by enjoining the New York suit, the court *would* be blocking litigation of the claims sought to be arbitrated.

Petitioners' argument is incorrect for two reasons.  First, Petitioners are wrongly conflating the Uber/Petitioners dispute with the Uber/AAA dispute.  The gravamen of Uber's New York lawsuit is not that AAA violated the Uber/Petitioners arbitration agreements (which

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

AAA did not sign or negotiate), but instead that AAA has separate legal obligations (owed directly to Uber, and not owed to Petitioners) which AAA violated.  While Uber agreed to arbitrate its disputes with *Petitioners*, Uber never agreed to arbitrate its separate disputes with *AAA*.  Indeed, the New York court denied Petitioners' motion to intervene precisely because the Uber/AAA fee dispute is a distinct dispute in which Petitioners have no interest.

Hence, Petitioners gain no traction from their block-quote of a statement in Uber's brief in *Abadilla v. Uber Technologies, Inc.*, No. 3:18-cv-7343 (N.D. Cal. Jan 14, 2019).  *See* Mot. at 13 (ECF No. 13).  In that case, the *signatories of an arbitration agreement* sued Uber in federal court, and Uber moved to compel arbitration.  Here, by contrast, Uber's separate suit against AAA is not arbitrable, so enjoining that suit would not qualify as compelling arbitration.

Second, Petitioners' argument fails because they do not actually seek to compel arbitration of the fee dispute at issue in New York.  Instead, they ask *this Court* to order Uber to pay over $10 million to AAA.  But the Court cannot issue such an order unless it decides that Uber actually owes that money.  So Petitioners, in effect, ask the Court to decide the very dispute that Petitioners claim is arbitrable.  Blocking a state court proceeding so that Petitioners can litigate the same issue in federal court is not an order compelling arbitration under the FAA.

### 2.    The Anti-Injunction Act bars Petitioners' requested relief.

The Anti-Injunction Act provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  22 U.S.C. § 2283.  "On its face," the Anti-Injunction Act "is an absolute prohibition [] against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions."  *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970).  Courts must construe these exceptions "narrowly and resolve doubts in favor of letting the state action proceed."  *Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1378 (9th Cir. 1997).

Petitioners do not dispute that they request a generally prohibited "injunction to stay proceedings in a State court."  Instead, they argue that the requested injunction fits into one of

the Act's exceptions—*i.e.,* that it is "necessary" in aid of the Court's jurisdiction or to "protect or effectuate its judgments." Mot. at 18-19 (ECF No. 13).

Petitioners are wrong. Neither exception applies. First, staying the New York suit is not "necessary" in aid of the Court's jurisdiction. "In general, the necessary-in-aid-of-jurisdiction exception applies to in rem proceedings where the federal court has jurisdiction over the res and the state court proceedings might interfere with that." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1101 (9th Cir. 2008). "But that principle does not authorize interference with parallel in personam state actions merely because the state courts might reach a conclusion before the district court does." *Id.* Here, Petitioners seek to interfere with a parallel in personam state court action, which violates the Anti-Injunction Act.

To be sure, "[c]ourts have held that the existence of advanced federal in personam litigation may, in some instances, permit an injunction in aid of jurisdiction." *Negrete*, 523 F.3d at 1102. "But in less advanced cases, courts have been more chary about issuing injunctions, as, indeed, they should have been." *Id.* Here, a state trial court has already conducted an evidentiary hearing and a state appellate court has already granted interim relief, whereas the federal case is just beginning. Hence, an injunction in aid of jurisdiction is unwarranted.

In an effort to rescue their position, Petitioners argue that Uber should lose the New York litigation. They argue, for instance, that AAA is entitled to apply its fee schedule without regard to other provisions of its Rules (Mot. at 12 (ECF No. 13)) and that AAA has absolute immunity (*Id.* at 13). Although Uber strongly disagrees with those arguments, they are irrelevant to the Anti-Injunction Act. AAA is perfectly capable of defending its own interests in state court, and the New York court is perfectly capable of adjudicating these issues. Petitioners' disagreement with the New York court's injunction is not a sufficient basis to overcome the Anti-Injunction Act. *Negrete*, 523 F.3d at 1102 (holding that "the mere fact that a state court may reach a conclusion that differs from what a federal court would prefer does not" warrant applying the necessary-in-aid-of-jurisdiction exception).

Nor can Petitioners invoke the Anti-Injunction Act's narrow exception for orders to "protect or effectuate [a court's] judgment." Mot. at 19-20 (ECF No. 13). That exception does

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

1   not apply here because there is no judgment.  The purpose of this exception, known as the

2   "relitigation exception," is "to permit a federal court to prevent state litigation of an issue that

3   previously was presented to and decided by the federal court."  *Chick Kam Choo v. Exxon Corp.*,

4   486 U.S. 140, 147 (1988).  "[A]n essential prerequisite for applying the relitigation exception is

5   that the claims or issues which the federal injunction insulates from litigation in state

6   proceedings actually have been decided by the federal court."  *Id.* at 148.  Here, no federal court

7   has decided anything.

8          Moreover, even if there existed a judgment compelling arbitration, the relitigation

9   exception would not apply because AAA is not a party to this litigation.  The relitigation

10  exception is "founded in the well-recognized concepts of res judicata and collateral estoppel."

11  *Sandpiper Vill. Condo. Ass'n., Inc. v. La.-Pac. Corp.*, 428 F.3d 831, 847 (9th Cir. 2005)

12  (citations and quotations omitted).  Petitioners do not explain how a judgment compelling

13  arbitration would bar Uber's separate claim against AAA under res judicata or collateral estoppel

14  principles.  *See Quackenbush*, 121 F.3d at 1379 (relitigation exception did not apply when

15  litigant sought to enjoin state court case involving third party and state court was "free to decide"

16  whether claims involving third party were arbitrable).

17         Petitioners rely on cases from other jurisdictions in which courts have compelled parties

18  to arbitrate claims and enjoined those parties from litigating the claims in state court.  Mot. at 19

19  (ECF No. 13).[2]  Notably, a court within this District has reached the opposite conclusion, holding

20  that the Anti-Injunction Act does not permit such relief.  *Geographic Expeditions Inc. v. Est. of*

21  *Jason Lhotka*, No. C 08-04624 SI, 2010 WL 3516116, at *3 (N.D. Cal. Sept. 8, 2010).  But even

22  if Petitioners' cases are correct, they hold—at most—that a federal court may enjoin a state court

23  action that "seeks to relitigate the validity of the arbitration clause and obtain judicial resolution

24  of the underlying dispute."  *Kag West, LLC v. Malone*, No. 15-cv-03827, 2016 WL 3951651, at

25  *4 (N.D. Cal. July 22, 2016) (citation omitted); *see G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d

26

27  ────────────────
    [2] Petitioners cite *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104 (9th Cir. 2002).  Mot. at 19
28  (ECF No. 13).  But that case merely mentioned in passing in the introductory section that a
    litigant sought to stay a state court action, and said nothing else about the issue.

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

1096, 1107 (9th Cir. 2003) (affirming injunction where "[a]fter the district court entered judgment on the arbitration award …, the Wilsons went back to Hawaii state court and asked it to find the Louisiana arbitration was 'void, vacated, and of no force and effect'").  Here, Uber is not seeking judicial resolution of any underlying dispute that a court has sent to arbitration.

Finally, even if the Anti-Injunction Act were technically to permit the injunction Petitioners seek, the Court should still exercise its discretion to deny it.  *See Blalock Eddy Ranch v. MCI Telecomms. Corp.*, 982 F.2d 371, 375 (9th Cir. 1992) (holding that even if an injunction may be issued within the parameters of the Anti-Injunction Act, courts have discretion in deciding whether to issue one).  In exercising that discretion, the Court should consider "principles of equity, comity, and federalism." *Kag West*, 2016 WL 3951651, at *6.  Those principles militate against taking the heavy-handed step of enjoining the state court case.

**B.  The Court Should Not Order Uber To Pay the Invoice.**

Petitioners also ask this Court to order Uber to pay AAA's full invoice.  Resolving that issue necessarily requires the Court to determine the legality of AAA's invoice.  The Court should allow the New York courts to decide that issue.  If the Court reaches the merits, it should rule that Uber does not owe AAA over $10 million and therefore should not have to pay.

**1.  Petitioners' requested order would violate the Anti-Injunction Act.**

Petitioners seek an order that would require Uber to pay AAA's invoice, notwithstanding the New York court's injunction staying the payment deadline for that very invoice.  Such an order violates the Anti-Injunction Act.

In applying the Anti-Injunction Act, courts disregard "the mere form of the injunction" requested and instead decide whether "[i]n substance, it interferes with proceedings in other courts." *Negrete*, 523 F.3d at 1098.  Here, Petitioner's requested order would have the practical effect of overturning the New York injunction.  The New York court's stay of the time to pay the invoice would be rendered meaningless if this Court ordered immediate payment of the invoice.  Further, as explained above, no exceptions to the Anti-Injunction Act apply.

2. **If the Court does not dismiss, it should abstain.**

Even if Petitioners' requested order did not violate the Anti-Injunction Act, the Court should nonetheless abstain to avoid interference with the state court suit.

Petitioners ask for an order directing Uber to pay over $10 million to AAA—a party that is not before this Court.  To issue such an order, the Court necessarily will have to decide whether, in fact, Uber is required to pay AAA this money.  However, that is the *exact* issue Uber and AAA are currently litigating in New York.  The New York appellate court has issued an injunction extending the deadline for paying that invoice until it decides whether AAA's $10 million invoice is legal.  This Court should abstain from deciding the issue currently pending before the New York court.

Under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), a federal court may decline to exercise jurisdiction in favor of state proceedings based on "considerations of '(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'"  *Id.* at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)); *see Montanore Mins. Corp. v. Bakie*, 867 F.3d 1160, 1166 (9th Cir. 2017), *as amended on denial of reh'g and reh'g en banc* (Oct. 18, 2017) (identifying relevant factors in deciding whether to abstain under *Colorado River*).

Here, it makes sense to allow the New York court to complete its work.  The state court had already made "substantial progress[] by the time the federal proceeding was filed." *Montanore*, 867 F.3d at 1170.  Indeed, the trial court in New York has already ruled, and Uber has perfected its appeal, on an expedited basis, so that it may be heard in March 2022.  As well, the New York case involves the parties with a real financial interest—AAA and Uber—which will ensure that the issues are properly aired.  *Id.* at 1167 (courts may consider "[t]he inconvenience of the federal forum" (emphasis altered)).

Petitioners claim that the New York court cannot bind Petitioners because they are not parties in that case.  They claim that even if Uber prevails in New York, Petitioners are entitled to their own day in court in California, so there is no way to avoid duplicative litigation.  Mot. at 10, 17 (ECF No. 13).  But the New York litigation is very likely to moot this case: the New York

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

court will resolve the parties' dispute over the invoice, Uber will pay the invoice, Petitioners and Uber will arbitrate, and there will be nothing for this Court to compel. *Montanore*, 867 F.3d at 1166 (in applying *Colorado River* abstention, courts may consider whether the state court "can adequately protect the rights of the federal litigants" and "whether the state court proceedings will resolve all issues before the federal court"). Hence, it would be more efficient to await the state appellate court's ruling.

By contrast, if the Court exercises jurisdiction here, litigation would be duplicative at best and chaotic at worst. If this Court rules in Uber's favor, AAA would doubtless argue that such an order does not bind it and it can keep litigating its entitlement to $10 million in state court. If this Court compels arbitration, the Court's order would throw a wrench into the New York case as the parties labor to determine how to reconcile the competing court orders.

In arguing against *Colorado River* abstention (Mot. at 18 (ECF No. 13)), Petitioners rely primarily on *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983). There, after a hospital sued a construction company in state court, the construction company filed a federal suit seeking to compel arbitration. *Id.* at 7-8. The Court held that the federal court should have adjudicated the suit rather than abstaining. *Id.* But *Moses H. Cone* differs significantly from this case. *Moses H. Cone* did not involve a party asking a court to overturn a state court injunction, as Petitioners request here. Moreover, in *Moses H. Cone*, the state court case involved litigation of the *claims sought to be arbitrated*. Exercising jurisdiction over the FAA petition in those proceedings therefore advanced the federal policy favoring arbitration. Here, in contrast, both parties to the state court case agree that arbitration will occur—the sole question is whether AAA can charge Uber an unreasonable fee. Taking AAA's side of that dispute would not advance the FAA's federal policy. Therefore, *Moses H. Cone* poses no obstacle to abstention.

### 3.    If the Court reaches the merits, Uber should win.

If the Court reaches the merits of this motion, it should rule for Uber. The Court should not order Uber to pay AAA over $10 million in case management fees because Uber does not owe AAA all of this money, as Uber is currently arguing in New York court.

a.     The Court should not blindly defer to AAA's invoice.

Petitioners' argument boils down to the theory that the Court should defer blindly to AAA's invoice.  That argument conflicts with both the arbitration agreement and common sense.  The FAA permits "an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  The parties dispute what "the manner provided for in such agreement" entails.  The agreement incorporates AAA's Consumer Rules and Consumer Due Process Protocol.  Petitioners believe that AAA's Consumer Rules and Consumer Due Process Protocol permit the $10 million invoice.  Uber believes they do not.  The Court cannot simply assume Petitioners are correct.  If it reaches the merits, it must interpret AAA's Consumer Rules and Consumer Due Process Protocol, and address Uber's arguments, in order to resolve this case.

No case supports Petitioners' assertion that the Court can blindly defer to AAA's invoice without entertaining Uber's objections.  Petitioners rely on *Allemeier v. Zyppah, Inc.*, No. CV 18-7437, 2018 WL 6038340 (C.D. Cal. Sept. 21, 2018), but in that case there was no dispute over the amount of payment; rather, one party just refused to pay its portion of the filing fee.  *Id.* at *1.  Here, by contrast, Uber has paid significant amounts of money in order to initiate arbitration, but contends that paying this invoice would *violate* the arbitration agreement.

More fundamentally, the Court should not issue an order compelling arbitration on illegal terms.  In the New York litigation, Uber argues that AAA is legally barred from charging Uber its $10 million invoice.  If that argument prevails, an order directing Uber to pay the invoice would violate Uber's legal rights.  Nothing in the FAA authorizes such an illegal order.

Petitioners claim that Uber agreed not only to abide by AAA's *rules*, but also AAA's *interpretations* of those rules.  Petitioners point to language in AAA's consumer rules delegating to the arbitrator the responsibility of interpreting AAA's rules.  Mot. at 12 (ECF No. 13).  Therefore, according to Petitioners, Uber agreed to blindly follow all AAA decisions purportedly interpreting AAA's rules, including its decisions on how much Uber must pay in case management fees.

Petitioners misread the arbitration agreement.  Uber agreed to participate in individualized arbitrations in which Uber would abide by arbitrators' decisions acting in their

1    capacity as neutral arbiters.  Here, however, AAA did not issue its invoice in its capacity as a

2    neutral arbiter.  AAA was decidedly non-neutral, given that it was pocketing the money Uber

3    pays.  Instead, an AAA employee sent Uber an inflated and unlawful $10 million invoice, setting

4    up a commercial dispute.  It would make no sense for Uber to agree—and Uber in fact did not

5    agree—to blindly pay *whatever* AAA charged without any opportunity for review by a neutral

6    arbiter.  The Court should not immunize AAA's invoice from scrutiny, but should instead hold

7    that Uber is entitled to an independent assessment by a neutral arbiter on whether it owes $10

8    million.  *Cf. Hopper, MD v. Am. Arb. Ass'n, Inc*., 708 F. App'x 373 (9th Cir. 2017) *(*rejecting

9    AAA's assertion of immunity from claim challenging misleading advertisements as to arbitrator

10   selection process); *Kaiser v. BMW of N. Am., LLC*, No. C 12-01311, 2013 WL 100218, at *5

11   (N.D. Cal. Jan. 7, 2013) (rejecting arbitral organization's assertion of immunity because

12   plaintiff's allegations pertained to the organization's "financial gain" and the case was "not

13   grounded in [plaintiff's] dissatisfaction with or in an attempt to challenge [the] arbitration").

14          b.    <u>AAA's invoice violates AAA's rules and is unlawful.</u>

15          On the merits, Uber should prevail.  To obtain a preliminary injunction, Uber has to

16   establish a likelihood of success on the merits.  *See Barbes Rest. Inc. v. ASRR Suzer 218, LLC*,

17   140 A.D.3d 430, 431 (1st Dep't 2016).  And in granting interim relief, the First Department has

18   now determined that Uber may well succeed and that preliminary relief, pending appeal, is

19   therefore warranted.  That conclusion was correct.

20          As Uber's merits brief in the New York appellate court explains, Edelstein Decl., Ex. 9,

21   AAA's invoice violates applicable law in multiple respects, including because it violates AAA's

22   Consumer Rules and Consumer Due Process Protocol.  Specifically, the fee violates AAA's duty

23   "[a]s a non-profit organization" to "charge[] fees to compensate it for the cost of providing

24   administrative services," McCarthy Decl., Ex. B at 13, R-4 (ECF No. 14-2), and to charge

25   "reasonable" fees and "mak[e] … fee arrangements and the payment of fees … on a rational,

26   equitable and consistent basis." Edelstein Decl., Ex. 2 at 17, Principle 6.

27          AAA's $10 million invoice is staggering—and the total bill will eventually be much

28   higher.  Uber's $10 million invoice reflects only one type of fee (case management fees) for one

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

of five tranches of claimants.  If AAA charges filing fees *and* case management fees *and* arbitrator fees for all 31,000+ claimants, the total figure billed to Uber is anticipated to be more than $91 million, which represents almost 90% of AAA's total operating revenue in 2020.  *See* Edelstein Decl., Ex. 9 at 13.  $91 million is a categorically unreasonable fee demand in connection with the administration of materially identical arbitrations, especially given that AAA did not even try to defend its fees as reasonable or tied to costs.

AAA claims it is required to mechanically multiply the case management fees by the number of claimants, but AAA's fee schedule explicitly preserves the AAA's "discretion to interpret and apply th[e] fee schedule to a particular case or cases." McCarthy Decl., Ex. B at 34 (ECF No. 14-2); *see also* Edelstein Decl., Ex. 2 at 18, Reporter's Comments ("Due to the wide range of transactions and the equally broad spectrum of conflict in the Consumer arena, it is inappropriate to mandate bright-line rules regarding ADR costs."). Moreover, AAA maintains discretion to "consider an alternative payment process for multiple case filings," i.e., to adopt further reductions from the Multiple Consumer Case Filings fee schedule.  McCarthy Decl., Ex. B  at 36 (ECF No. 14-2).  AAA was plainly *permitted* by its rules to exercise discretion to deviate from its standard per-case fees, as AAA's own witness admitted at the New York evidentiary hearing—and given that AAA committed in its rules to charge reasonable fees, it was *required* to do so.

As explained in Uber's New York brief, AAA's conduct also violates the implied covenant of good faith and fair dealing.  *See* Edelstein Decl., Ex. 9 at 30. Uber has also stated claims for unjust enrichment, restitution, and a violation of consumer protection laws.  *See id.* at 31-32.  In short, AAA's invoice that Petitioners seek to enforce would violate Uber's rights.

Hence, if the Court reaches the merits, it should conclude that Uber does not owe $10 million to AAA, and decline to compel Uber to make that unlawful payment.

## III.   PETITIONERS HAVE NOT SUBSTANTIATED THEIR CLAIMS.

Petitioners have moved for an order directing Uber to pay over $10 million.  Even setting aside Uber's threshold objections, the Court should deny Petitioners' motion because they have not put forth sufficient evidence to show their entitlement to that relief.

RESPONDENTS' MOTION TO DISMISS AND OPPOSITION
TO MOTION TO COMPEL ARBITRATION

To obtain relief under the FAA, Petitioners bear the burden of proving the existence of an arbitration agreement.  9 U.S.C. § 4; *Nordeman v. Dish Network LLC*, 525 F. Supp. 3d 1080, 1085 (N.D. Cal. 2021).  Here, Petitioners allege they have Uber Eats accounts, and that Uber requires customers to enter into arbitration agreements.  Pet. ¶¶ 34, 42 (ECF No. 4).  But Petitioners do not submit any evidence that they do, in fact, have Uber Eats accounts, or any other individualized evidence that they have arbitration agreements.

Further, Petitioners allege that they "are customers who used the Uber Eats app during the relevant period and paid the discriminatory delivery fee."  Pet. ¶ 50.  To obtain relief from this Court, they bear the burden of proving that allegation, too.  Petitioners must show they are "aggrieved" by Uber's failure to arbitrate their discrimination claims.  9 U.S.C. § 4.  If Petitioners never paid any "discriminatory delivery fee," they have no discrimination claims.  Petitioners cannot be "aggrieved" by Uber's failure to arbitrate claims that do not exist.

Indeed, if Petitioners did not pay any delivery fee, this Court does not even have subject-matter jurisdiction.  As the proponents of federal jurisdiction, Petitioners bear the burden of proving—not just pleading—that subject-matter jurisdiction exists.  *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000).  In a motion to compel under the FAA, federal subject-matter jurisdiction is based on the underlying claim sought to be arbitrated.  *See Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009); *Jolly*, 485 F. Supp. 3d at 1197-98.  Only *nonfrivolous* federal claims establish federal jurisdiction.  *Bell v. Hood*, 327 U.S. 678, 682-83 (1946); *Leeson v. Transam. Disability Income Plan*, 671 F.3d 969, 975 (9th Cir. 2012).  Hence, to establish this Court's subject-matter jurisdiction, Petitioners bear the burden of proving that they seek to arbitrate a non-frivolous federal claim.  *Jolly*, 485 F. Supp. 3d at 1198 ("When determining whether there is jurisdiction over a petition for arbitration, a district court has authority to determine whether the underlying claims are frivolous." (emphasis altered)).

Petitioners' federal claim alleges that their payment of a delivery fee violated their civil rights under 42 U.S.C. § 1981.  If Petitioners never paid any allegedly discriminatory delivery fee, Petitioners' § 1981 claim would be frivolous.  Hence, to establish a non-frivolous federal claim, Petitioners must proffer proof that they paid a delivery fee.  Of course, the merits of the

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

dispute—*i.e.*, whether the payment of a fee was a civil rights violation—are for the arbitrator. But Petitioners must show the existence of a non-frivolous federal claim before obtaining an order compelling arbitration, which requires showing they paid the complained-of fee.

Uber is not holding Petitioners to their burden of proof merely to impose paperwork burdens on Petitioners' counsel. Rather, Uber has strong reasons to believe that, with respect to a substantial number of Petitioners, the allegations in the Petition are false. Petitioners are 7,271 individuals within the second tranche. Originally, there were 7,771 individuals within the second tranche, but as explained above, 500 of those arbitrations have moved forward after Uber paid $700,000 to AAA. Of those 500 claimants, Uber's investigation revealed that *135* either did not have an Uber Eats account or did not place an Uber Eats order during the relevant period. Gordon Decl. ¶ 9. If those 500 individuals are representative of the full second tranche, that would mean that upwards of 25% of the 7,271 Petitioners are pursuing frivolous claims, and that the Petition's allegations with respect to those persons are false.

Petitioners should not be permitted to evade the basic requirement of providing evidence before obtaining relief. This information is within Petitioners' possession and is easily accessible from Petitioners' Uber account. Gordon Decl. ¶¶ 4, 5. Further, Petitioners' counsel was ethically obligated to collect this information before representing in the Petition that Petitioners had paid an allegedly discriminatory fee. Before demanding relief from the Court, Petitioners should be required to substantiate their allegations.[3]

## IV.   PETITIONERS CANNOT OBTAIN RELIEF UNDER STATE LAW.

Petitioners also seek relief under California Code of Civil Procedure sections 1281.98 and 1281.99, which are provisions designed to force payment of arbitration invoices. Those statutes do not apply by their own terms. Moreover, they do not apply in federal court at all.

### A.   The California statutes do not apply by their own terms.

The California statutes on which Petitioners rely do not apply to this dispute. Petitioners allege that Uber breached the arbitration agreement under California law because "the fees or

---

[3] If it turns out that evidence supporting Petitioners' allegations does not exist, Uber reserves the right to seek Rule 11 sanctions.

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

costs required to continue the arbitration proceeding" were "not paid within 30 days after the due date."  Mot. at 20 (ECF No. 13) (citing Cal. Civ. Proc. Code § 1281.98(a)).  According to Petitioners, this alleged breach opens the door to relief under sections 1281.98 and 1281.99, including a payment order, "monetary sanction[s]" requiring payment of attorney's fees and costs, and even unspecified "terminating sanctions."  Mot. at 20-22 (ECF No. 13).

That argument fails for two reasons.  First, Uber has not failed to pay "within 30 days after the due date."  At present, there *is* no "due date."  The New York court extended a stay of Uber's deadline to pay the invoice.  Hence, Uber is not required to pay it, so it is not "due."

Petitioners cannot avoid this conclusion by claiming they are not bound by the New York injunction.  Uber is entitled to rely on court orders and should not face liability and attorney's fees based on Petitioners' disagreement with the New York order.  Indeed, Petitioners' argument illustrates how plainly this lawsuit runs roughshod on federalism: Not only do Petitioners seek to enjoin the New York litigation, but Petitioners actually seek to impose monetary and terminating sanctions on Uber merely because Uber relied in good faith on an order issued by the state court.

Moreover, the invoice was issued by AAA.  The New York litigation binds the AAA. The New York court told AAA that Uber's "time to pay" the invoice was "extended" pending determination by the full court.  The Court cannot simply treat the due date on AAA's invoice as binding while ignoring a court order directed to AAA staying the invoice's due date.

Second, Uber has not breached its obligations to pay "the fees or costs required to continue the arbitration proceeding," Cal. Civ. Proc. Code § 1281.98, because, as explained above, Uber does not owe $10 million.  Petitioners' argument simply assumes the conclusion that "the fees or costs required to continue the arbitration proceeding" are the "fees or costs" on AAA's invoice.  However, that is the exact issue that is under dispute.  If Uber's position is correct and Uber does not owe that money, then AAA's invoice does *not* reflect the fees "required to continue the arbitration proceeding" and Uber has not breached anything.

**B.     The California statutes do not apply in federal court.**

Under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), and its progeny, sections 1281.98 and 1281.99 do not apply in federal court.  That is true whether they are understood as

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

procedural or substantive. In Uber's view, the California statutes are best understood as a procedural mechanism for enforcing arbitration agreements, akin to the California Arbitration Act. If this is correct, the statutes would not apply in federal court because federal courts apply federal procedural law. But even if California's statutes are substantive, they would not apply in federal court because the Court would lack jurisdiction over Petitioners' substantive claim.

### 1. The California statutes are procedural.

The California Legislature intended for its statutes to be procedural provisions that apply in state court only. Section 1281.97(a)(1) provides that a party who fails to pay fees and costs "waives its right to compel arbitration under Section 1281.2."[4] Section 1281.2 refers to the California Arbitration Act, which applies only in state court. *See Wayans v. BMW of N. Am., LLC*, No. CV 19-7319, 2020 WL 2046392 (C.D. Cal. Jan. 7, 2020) (California Arbitration Act applies in California courts only). While Petitioners here rely on § 1281.98, the two provisions operate in parallel: §1281.97 refers to fees for *initiating* arbitrations, while §1281.98 refers to fees for *continuing* arbitrations. There is no basis for concluding that the Legislature intended for §1281.97 to apply only in state court but for § 1281.98 to apply in federal court.[5]

Even if some parts of California's statutes are substantive, § 1281.99 is plainly procedural. Petitioners seek sanctions under § 1281.99, including "attorney fees and costs and terminating sanctions." Mot. at 22 (ECF No. 13). However, the sanctions at issue in § 1281.99 are *litigation* sanctions, such as a "monetary sanction," "evidence sanctions," and "terminating sanctions." In federal court, Federal Rules of Civil Procedure 11 and 37, not state law, govern

---

[4] Throughout this brief, Petitioners quote the versions of §§ 1281.97 and 1281.98 that were in place at the time the Petition was filed. Those provisions were amended effective January 1, 2022. Nothing in these amended statutes indicates that they apply retroactively, and Petitioners' motion (which was filed after January 1) does not appear to take that position.

[5] Moreover, it is *impossible* to apply California's law in federal court. Under § 4 of the FAA, if the court concludes that there is an enforceable arbitration agreement that covers a controversy, it *must* compel arbitration of the claim. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). But California's law works the opposite way: it gives courts the very discretion that the FAA denies. Under §§ 1281.97 and 1281.98, if the consumer fails to pay required fees under an arbitration agreement, the court is permitted to compel arbitration, but it is not required to do so. Instead, the court may allow the plaintiff to proceed in litigation. Cal. Civ. Proc. Code §§ 1281.97(b)(2), 1281.98(b)(1). This shows that the California legislature intended these statutes to be procedural vehicles for enforcing arbitration agreements that apply in state court only.

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

litigation sanctions. *See Sibbach v. Wilson & Co.*, 312 U.S. 1, 15-16 (1941), *as amended on denial of reh'g* (Feb. 10, 1941). Hence, the Court should reject Petitioners' effort to apply state sanctions law to this federal dispute.

> **2.     Even if they are substantive, California's laws still do not apply.**

In *Dekker v. Vivint Solar, Inc.*, 479 F. Supp. 3d 834, 837 (N.D. Cal. 2020), *reversed on other grounds*, 2021 WL 4958856 (9th Cir. 2021), a district court held that § 1281.97 (which is similar to § 1281.98) was "substantive" because it "modifies substantive state contract law." *Id.* While Uber disagrees with *Dekker*, California's statute would not apply in federal court even if *Dekker* is correct.

Quite simply, the Court needs subject-matter jurisdiction to resolve a substantive state-law cause of action, and here, no source of subject-matter jurisdiction exists. *Dekker* holds that California's statute is a substantive state law cause of action that, "[i]n diversity," applies in federal court. *Id.* However, this Court lacks diversity jurisdiction to adjudicate that claim because many Petitioners are from California and Uber is also from California.

Petitioners do not allege that there is diversity jurisdiction. Instead, they allege that the Court has jurisdiction under the federal supplemental jurisdiction statute, 28 U.S.C. § 1367. But the Court does not have supplemental jurisdiction to hear Petitioners' state-law claim, either.

Under *Vaden*, federal subject-matter jurisdiction for a motion to compel under the FAA turns on the underlying claims sought to be arbitrated. The Court explained that the FAA "bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." 556 U.S. at 59 (cleaned up). Instead, to determine whether there is an independent jurisdictional basis, a federal court "should assume the absence of the arbitration agreement and determine whether it would have jurisdiction under title 28 without it" over the "substantive conflict between the parties." *Id.* at 62-63 (cleaned up). Here, the Court has subject-matter jurisdiction in this case only because Petitioners seek to compel arbitration of a claim that arises under federal law, specifically, a claim under 42 U.S.C. § 1981.

It follows that Petitioners' claim under § 1281.97 does not fall within the Court's supplemental jurisdiction. Under 28 U.S.C. § 1367, "the district courts shall have supplemental

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105

jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Here, the "claims in the action within such original jurisdiction" are the claims under 42 U.S.C. § 1981. Hence, state-law claims related to *those* claims—*i.e.*, state-law claims arising out of *the underlying controversy that Petitioners are trying to arbitrate*—fall within a federal court's supplemental jurisdiction. *See Vaden*, 556 U.S. at 69 n.18 (supplemental jurisdiction extends to state-law claims that are part of the same controversy as federal claims).

As applied to this case, the Court has supplemental jurisdiction over Petitioners' motion to compel arbitration of their state-law claims under the Unruh Act arising out of the allegedly discriminatory initiative. Those state-law claims arise from the same transaction as the "claims in the action within such original jurisdiction," *i.e.*, the § 1981 claims. Hence, under *Vaden*, the Court has supplemental jurisdiction to decide whether they should be arbitrated. But the Court does not have supplemental jurisdiction over the substantive claim alleging a breach of the arbitration agreement because that controversy is not part of the same transaction as Petitioners' § 1981 claims. Hence, the Court lacks jurisdiction over Petitioners' state-law claims.

## CONCLUSION

The motion to compel should be denied, and the Petition should be dismissed. Petitioners' FAA claim fails because Uber has not failed to arbitrate. In addition, Petitioners' FAA claim fails because the relief sought by Petitioners is barred by the Anti-Injunction Act. If the Court does not dismiss outright, it should abstain under *Colorado River*. If the Court reaches the merits, it should rule that Uber does not owe AAA $10 million because the invoice violates AAA's rules and is invalid. At a minimum, the Court should deny the motion to compel because Petitioners have presented no evidence. The Court should dismiss Petitioners' state-law claims because the state statute does not apply on its own terms, and does not apply in federal court.

Dated:   January 31, 2022                                  JENNER & BLOCK LLP

                                                                           By:  */s/  Laurie Edelstein*

                                                                                   Laurie Edelstein (Bar No. 164466)

Sophia Cai (Bar No. 327773)
JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, California 94105
Telephone:  (628) 267-6800
Facsimile:  (628) 267-6859
ledelstein@jenner.com
scai@jenner.com

Adam Unikowsky (admitted *pro hac vice*)
JENNER & BLOCK LLP
1099 New York Ave., NW
Washington, DC 20001
Telephone:  (202) 639-6041
Facsimile:  (202) 661-4925
aunikowsky@jenner.com

*Attorneys for Respondents*
*Uber Technologies, Inc. and Uber USA, LLC*

JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105