Bryan Weir (#310964)
   bryan@consovoymccarthy.com
Thomas R. McCarthy (admitted *pro hac vice*)
   tom@consovoymccarthy.com
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423

Patrick Strawbridge (admitted *pro hac vice*)
   patrick@consovoymccarthy.com
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, Massachusetts 02109
(617) 227-0548

Bradley A. Benbrook (#177786)
   brad@benbrooklawgroup.com
BENBROOK LAW GROUP PC
701 University Avenue, Suite 106
Sacramento, CA 95825
(916) 447-4900

*Counsel for Petitioners*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| VALERIA HERMOSILLO CHAVEZ, ERIK ESPARZA, JAMAR SMITH, ANTHONY SIMONEAU, and 7,267 OTHER INDIVIDUALS, <br><br> Petitioners, <br><br> v. <br><br> UBER USA, LLC; and UBER TECHNOLOGIES, INC., <br><br> Respondents. | Case Number: 3:21-cv-9577 <br><br> **OPPOSITION TO RESPONDENTS' MOTION TO DISMISS AND REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION** <br><br> **Date:   March 10, 2022** <br> **Time:   1:30 p.m.** <br> **Courtroom 3** |

1

## <u>TABLE OF CONTENTS</u>

2   INTRODUCTION ...................................................................................................1

3   ARGUMENT .......................................................................................................2

4       A.   Uber is refusing to arbitrate Petitioners' cases. ......................................2

5       B.   This Court has authority to stay the parallel New York proceedings........................4

6           1.   The FAA authorizes a stay of the New York action. ......................5

7           2.   The Anti-Injunction Act does not bar a stay of the New York case...............7

8       C.   Abstention is not appropriate.............................................................8

9       D.   The merits of the AAA fees are not for this Court to decide...........................10

10      E.   Uber does not and cannot contest the existence of arbitration agreements for Petitioners'
            accounts. ...........................................................................10

11
12      F.   Relief under Cal. Civ. Pro. §§1281.98 and 1281.99 is warranted. ...................13

13          1.   The California statutes cover this precise scenario. ...................13

14          2.   The California statutes are substantive, not procedural, and apply in federal court......16

15  CONCLUSION .................................................................................................17

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

3
*A.L. Williams & Assocs., Inc. v. McMahon*, 697 F. Supp. 488 (N.D. Ga. 1988) ........................10

4
*Agerkop v. Sisyphian LLC*, 2021 WL 1940456 (C.D. Cal. 2021) ..........................................15, 16

5
*Allemeier v. Zyppah, Inc*., 2018 WL 6038340 (C.D. Cal. 2018).................................................2

6
*Beauperthuy v. 24 Hour Fitness USA, Inc*., No. 06-715 SC, 2011 WL 6014438 (N.D. Cal. Dec.
2, 2011)..................................................................................................................................3

7

*Bell v. Hood*, 327 U.S. 678 (1946) ............................................................................................12

8
*Bras v. California Public Utilities Com'n*, 59 F.3d 869 (9th Cir. 1995)....................................13

9
*Brown v. Pacific Life Ins. Co*., 462 F.3d 384 (5th Cir. 2006) .......................................................8

10
*CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078 (C.D. Cal. 2015).8

11
*Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104 (9th Cir. 2002) ..................................................8

12
*Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)..............................8

13
*Daniels v. Securitas Security Services USA, Inc*., 2021 WL 2322938 (C.D. Cal. 2021) ........15, 16

14
*Dekker v. Vivint Solar, Inc*., 2021 WL 4958856 (9th Cir. 2021) ..................................................14

15
*Dekker v. Vivint Solar, Inc*., 479 F. Supp. 3d 834 (N.D. Cal. 2020) ......................................14, 16

16
*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)..........................................................................16

17
*Geographic Expeditions Inc. v. Est. of Jason Lhotka*, 2010 WL 3516116 (N.D. Cal. Sept. 8,
2010)......................................................................................................................................8

18

19
*Hagan v. Park Miller LLC*, 2021 WL 1688347 (N.D. Cal. 2021) ...............................................16

20
*Insurance Newsnet.com, Inc. v. Pardine*, 2011 WL 3423081 (M.D. Pa. Aug. 4, 2011)...............8

21
*International Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Aloha Airlines, Inc*., 790
F.2d 727 (9th Cir. 1986) .................................................................................................10, 12

22

23
*Jolly v. Intuit Inc*., 485 F. Supp. 3d 1191 (N.D. Cal. 2020) .....................................................4, 12

24
*Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969 (9th Cir 2012) ..........................12

25
*Mendoza v. Amalgamated Transit Union International*, 2017 WL 5045646 (D. Nev. 2017) ......17

26
*Miller v. Fairchild Industries, Inc*., 797 F.2d 727 (9th Cir. 1986) ..............................................13

27
*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc*., 473 U.S. 614 (1985) ........................6

28
*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1 (1983) .....................3, 6, 8, 9

*Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091 (9th Cir. 2008) ....................................7

*PaineWebber Inc. v. Faragalli*, 61 F.3d 1063 (3d Cir. 1995) ...........................................................3

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) ...............................6

*Southland Corp. v. Keating*, 465 U.S. 1 (1984) .................................................................................7

*Specialty Bakeries, Inc. v. RobHal, Inc.*, 961 F. Supp. 822 (E.D. Pa. 1997)..................................7

*Tapia v. Braiform Enterprises, Inc.*, 2020 WL 5167740 (C.D. Cal. 2020)..................................16

*Taylor v. Sturgell*, 553 U.S. 880 (2008) ...........................................................................................14

*THI of New Mexico at Vida Encantada, LLC v. Archuleta,* No. CIV. 11-0399 BB/ACT, 2012 WL 8169886 (D.N.M. Jan. 12, 2012)...........................................................................................5

*Trs. of Constr. Indus. and Laborers Health and Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923 (9th Cir. 2003) ................................................................................17

*Watermark Harvard Square, LLC v. Calvin*, 2018 WL 1166707 (D. Colo. 2018)..................5, 10

*Williams & Assocs., Inc. v. McMahon*, 697 F. Supp. 488 (N.D. Ga. 1988) ................................10

**STATUTES**

28 U.S.C. §2283 .....................................................................................................................................7

42 U.S.C. §1981 ...................................................................................................................................12

9 U.S.C. §10(a) .......................................................................................................................................6

Cal. Civ. Pro. §1281.98 ..................................................................................................13, 14, 15, 16

**OTHER AUTHORITIES**

Assemb. Judiciary Comm. Hr'g on SB 707 (Cal. June 18, 2019)..................................................14

Edelstein Decl............................................................................................................................9, 14

First Weir Decl. ..............................................................................................................4, 5, 10, 14

Gordon Decl. (Doc. 24) ....................................................................................................................11

McCarthy Decl. ..........................................................................................................................4, 11

R-49(d) ..................................................................................................................................................4

Second Weir Decl.................................................................................................................passim

Senate. Judiciary Comm. Hr'g on SB 707 (Cal. April 11, 2019).................................................14

Tony West, Twitter (Oct. 30, 2020) ................................................................................................13

Uber Br., *Abadilla v. Uber Techs., Inc.*, No. 3:18-cv-7343 (N.D. Cal. filed Jan. 14, 2019)...........1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **INTRODUCTION**

Uber cannot deny the obvious: its refusal to pay AAA's invoices and its lawsuit in New York are preventing Petitioners' arbitrations from proceeding. Nor can Uber deny that it incorporated the very fee schedule it is challenging into its Terms of Service, that the same contract and AAA's rules delegate interpretations about the fees and rules to the arbitrator, and that AAA already has rejected Uber's attempt to unilaterally alter the Uber-incorporated fee schedule.

It is also undisputed what Uber does when the shoe is on the other foot. When an *individual* disputes an arbitrator's fees, Uber has little trouble recognizing that its arbitration agreement delegates that question to the arbitrator. Thus, in *Abadilla v. Uber Technologies, Inc*., Uber argued that:

- "It is well established law in the Ninth Circuit that when a contract delegates the arbitrability question to an arbitrator, a court may not override the contract."

- When a party to an arbitration agreement "refuse[s] to pay their respective portion of the filing fee needed to initiate arbitration, and ha[s] likewise refused to have a JAMS arbitrator decide the issue, [they] should not be allowed to manufacture a dispute over fees, and then eschew the very forum in which they agreed to resolve that dispute."

- "Accordingly, the Court should … order them to submit their dispute to JAMS for resolution."

Uber Br. at 1, *Abadilla v. Uber Techs., Inc.*, No. 3:18-cv-7343 (N.D. Cal. filed Jan. 14, 2019) (Dkt. 53).

Confronted with its hypocrisy, Uber claims to have found a workaround to this "well established law" governing the delegation of threshold arbitration issues to the arbitrator. So long as it frames its suit as one *against* the arbitrator, Uber says, it can ignore the delegation clause it drafted, the rules and fee schedule it incorporated into its agreement, and the mutual obligation to

arbitrate that it otherwise enforces so stringently. If the claimants in *Abadilla* had just sued JAMS, Uber contends, everything would have been fine. *See* Uber Opposition (Opp.) 17.[1]

That makes no sense. A party to a lawsuit cannot escape the obligation to litigate the case by separately suing the judge. A basketball team is not allowed to start fouling the referee and then argue its opponent is not disadvantaged. The FAA and California law prohibit Uber's attempt to forestall Petitioners' claims indefinitely by litigating plainly arbitrable issues in state court. This Court should put an end to Uber's obstruction and grant Petitioners' requested relief.

## ARGUMENT

### A.  Uber is refusing to arbitrate Petitioners' cases.

There is no dispute that: (1) Uber agreed to pay the fees for Petitioners' arbitrations that were set by AAA's public schedule; (2) AAA invoiced Uber the fees that were calculated by reference to its published schedule; (3) Uber has the ability to pay the invoice; and (4) Uber has refused to pay the invoice, thus preventing AAA from moving forward with these arbitrations. Uber instead has filed suit in New York against the AAA, tying up the fees in litigation for an indeterminate period.

Under these circumstances, Uber is unquestionably refusing to proceed with *these* arbitrations. Petitioners filed their claims against Uber more than a year ago. In exchange for giving up the bounty of rights associated with court action, they seek the efficiencies that arbitration is supposed to offer. But now they are stuck in limbo due to Uber's refusal to abide the terms of the agreement. Other courts have had little trouble recognizing that obstructive tactics like Uber's constitute a refusal to arbitrate that is sufficient to support a petition under §4 the Federal Arbitration Act (FAA). *See, e.g., Allemeier v. Zyppah, Inc.*, 2018 WL 6038340, at *4 (C.D. Cal. 2018) ("[t]he Court finds that by repeatedly refusing to pay its portion of the filing fee as determined by the AAA . . . and continuing to oppose arbitration here, Zyppah has failed or refused to arbitrate"); *see also Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-715 SC, 2011 WL

---

[1] References to page numbers in this brief refer to numbers assigned by the court's ECF system or the PDF version of the cited document.

6014438, at *2-4 (N.D. Cal. Dec. 2, 2011) (rejecting argument that defendants were not refusing to arbitrate under the FAA because they were willing to arbitrate in a location other than the one provided for in the agreement).

Uber's argument—that Petitioners are not "aggrieved" under the FAA because Uber claims it is willing at some point in the future to arbitrate *if* the AAA invoice is discounted to a satisfactory level—is untenable. Just as in *Beauperthuy,* Uber's position "would defeat the 'policy of rapid and unobstructed enforcement of arbitration agreements' embodied in the FAA." 2011 WL 6014438, at *4 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 (1983)). As the *Beauperthuy* court noted in analogous circumstances:

> If a party were deemed not to have "refused" arbitration so long as it expressed a willingness to arbitrate in some venue somewhere, then a valid arbitration agreement could be rendered meaningless by the parties' inability to settle on a mutually agreeable location, and courts would be powerless to intervene. For example, Defendants here could file motions to compel arbitration in various other districts, to which Moving Plaintiffs could respond that they would be happy to arbitrate but only in this district. A state of paralysis would result in which Moving Plaintiffs' claims could never be adjudicated until one party caved to the other's venue demands.

*Id.* That is the upshot of Uber's position here. It will arbitrate these decisions someday, it promises, provided it succeeds in its efforts to challenge AAA's "unlawful fee" and instead obtains a "reasonable fee." Opp. 13-14. That is no different than a party refusing to arbitrate unless its preferred arbitrator is selected, its preferred venue is chosen, or its preferred hearing schedule is adopted. Conditional refusals are still refusals.[2] Uber's actions are obstructing Petitioners' cases, and the FAA is designed to put a stop to that obstruction.

Uber prefers to blame AAA as the reason it cannot proceed with these arbitrations now. Its complaints about the unfairness of AAA applying the very rules that Uber selected when drafting its arbitration agreement are as baseless as they are hypocritical—which is one of the reasons the

---

[2] Uber's no-refusal argument relies upon a lone Third Circuit decision that analyzes when a refusal is sufficiently unequivocal to start the running of the statute of limitations. *See PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1067 (3d Cir. 1995). And that case specifically notes that a spectrum of actions can constitute a sufficient refusal to arbitrate, including "the commencement of litigation by one party to a claimed arbitrable dispute[.]" *Id.* That is what Uber has done in New York: commenced litigation of arbitrable issues.

1    New York trial court rejected all of Uber's arguments. *See* First Weir Decl., Ex. G. But even as

2    Uber tries to justify its actions, it can't help but confirm that it is litigating questions about the

3    agreement that are delegated to the arbitrator. Recall that Uber's arbitration clause specifically

4    leaves to the arbitrator "any disputes relating to the interpretation, applicability, enforceability or

5    formation of this Arbitration Agreement." McCarthy Decl., Ex. A at 4. Uber's complaint in New

6    York is that AAA has "violated its contractual obligations toward Uber," as well as its "Consumer

7    Rules and Consumer Due Process Protocol," which Uber concedes is "incorporated into

8    Petitioners' arbitration agreements with Uber." Opp. 14.[3] Uber thus seeks an order from the New

9    York courts that will ensure "AAA follows the rules that Petitioners' arbitration agreement

10   requires AAA to follow." *Id*. But those are exactly the questions that are delegated to the arbitrator,

11   and the parties' agreement and the FAA together require Uber to take them to the arbitrator in the

12   first instance. Its failure to do so constitutes a refusal to proceed under the FAA.

13         Uber's reliance on *Jolly v. Intuit Inc*., 485 F. Supp. 3d 1191 (N.D. Cal. 2020), is of no help.

14   That court's allowance of a state court suit "in aid of arbitration" was premised on specific

15   language in the agreement allowing suits for equitable relief. *Id.* at 1206. Uber's agreement allows

16   suits for equitable relief only in intellectual-property disputes. McCarthy Decl., Ex. A at 4. And

17   the *Jolly* court also premised its ruling on the fact that the defendant—unlike Uber here—"ha[d]

18   paid all arbitration fees … [and] has so far complied with all AAA rules and orders." *Id.*

19         **B.  This Court has authority to stay the parallel New York proceedings.**

20         Petitioners explained in their opening brief that courts routinely stay state court proceedings

21   as part of a motion to compel under the FAA. *See* Mot. 20-21 (collecting cases). Uber contends

22   that this Court lacks that authority, Opp. 16-17, and that the Anti-Injunction Act prohibits such

23

24

---

25   [3] Never missing a chance to undercut its own position, Uber fails to note that the same Consumer
     Rules that it claims to be trying to enforce *as part of the arbitration agreement* also incorporate
26   the fee schedule AAA applied, make clear that those fees "shall apply," (R-4), and prohibit the
     very suit that Uber has filed against AAA. *See* R-49(d) ("Parties to an arbitration under these Rules
27   shall be deemed to have consented that neither the AAA, AAA employees, nor any arbitrator shall
     be liable to any party in any action for damages or injunctive relief for any act or omission in
28   connection with any arbitration under these rules."); McCarthy Decl., Ex. B. 14, 31, 34-35.

1  relief. *Id.* 17-20. Petitioners anticipated these arguments in their motion, and Uber's opposition

2  does nothing to refute this Court's authority to stay the New York case.

3        **1.   The FAA authorizes a stay of the New York action.**

4        Uber does not contest that federal courts generally have the power to stay parallel state

5  court proceedings when they involve issues that are within the scope of an arbitration agreement.

6  Opp. 16. Instead, Uber argues that those cases are irrelevant because it has only sued AAA, not

7  Petitioners. *Id.* In other words, Uber believes it can escape its obligation to arbitrate by suing AAA

8  while opposing Petitioners' intervention in that lawsuit, sticking Petitioners on the sidelines

9  indefinitely.

10       This Court is not that powerless. Uber's litigation gamesmanship cannot alter the substance

11 of its claims against AAA. And Uber freely admits that its New York suit challenges the fee

12 provisions of the agreement, AAA's rules, and AAA's interpretation of those provisions. The

13 arbitration agreement's delegation clause squarely includes Uber's claims against AAA, which all

14 plainly arise from the "interpretation, applicability, enforceability or formation of this Arbitration

15 Agreement." McCarthy Decl., Ex. A at 4. This is why AAA itself has argued in the New York

16 proceedings that Petitioners are the real party in interest to that suit. *See* First Weir Decl., Ex. F,

17 22-23.

18       Uber would draw a line between its agreement with Petitioners on one hand, and AAA on

19 the other. But its New York challenge involves the assessment of fees in *Petitioner's* arbitrations.

20 The fee schedule—as well as the incorporation of the AAA rules and the provisions governing the

21 case administrations—are part of the arbitration agreement. There is no separate contract, and the

22 consequences of Uber's suit directly affects Petitioners' arbitrations. And, for FAA purposes, exact

23 parallelism is not required; "the fact that one of the parties in the state action is not present in the

24 federal action is 'inconsequential.'" *Watermark Harvard Square, LLC v. Calvin*, 2018 WL

25 1166707, at *3 (D. Colo. March 6, 2018); *see also THI of New Mexico at Vida Encantada, LLC v.*

26 *Archuleta,* No. CIV. 11-0399 BB/ACT, 2012 WL 8169886, at *4 (D.N.M. Jan. 12, 2012)

27 ("Asymmetry of parties is inconsequential especially where the parties are united by identical legal

28 interests").

Moreover, despite Uber's claims that its New York suit is the only way to raise its fee challenge, it *is* litigating fee questions in the individual arbitrations. Uber is pursuing counterclaims against hundreds of its consumers, seeking as a remedy the return of the very fees that they are complaining of here. Second Weir Decl. ¶7. This underscores that Uber's challenge to AAA's administration of these cases is part and parcel of the arbitration agreement—and thus an arbitral issue. And Uber always has the chance to challenge an arbitration's result once it is complete. *See* 9 U.S.C. §10(a) (allowing vacatur petitions when an arbitration award was, among other things, affected by "fraud," "corruption," or "misbehavior" of the arbitrators, as well as "where the arbitrators have exceeded their powers"). Uber should not be heard to complain that its New York action is the only way it can challenge AAA's administration.

Finally, the consequences of Uber's position illustrate its weakness. Any party to an arbitration agreement could frustrate arbitrations with endless challenges to the administration of the cases, simply characterizing them as suits against the arbitrator, not the party. Uber could challenge the process used to select the arbitrators as "unreasonable." It could challenge a decision to use teleconferences instead of in-person hearings, or the acceptance of written testimony rather than live testimony. It could complain about the pool of arbitrators made available for assignment, or the process used to select arbitrators for each case. As Uber tells it, these would all be separate disputes between it and AAA only, and Petitioners would be forced to wait in silence while Uber ties up their cases in ancillary litigation. That plainly violates the FAA, which advances "the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). The FAA is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible," *Moses H. Cone*, 460 U.S. at 22, and "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,'" *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Those principles require applying the FAA as intended and putting an end to Uber's obstructive New York proceeding.

### 2.   The Anti-Injunction Act does not bar a stay of the New York case.

Uber alternatively contends (at 11-13) that a stay of the New York proceedings is barred by the Anti-Injunction Act. Petitioners anticipated this argument in their opening brief and explained how numerous courts, in California and elsewhere, have stayed parallel state cases when the compel arbitration. *See* Mot. 18-19. The reason why a stay is appropriate is obvious: it is necessary to "preserve the integrity of this arbitration process." *Specialty Bakeries, Inc. v. RobHal, Inc.*, 961 F. Supp. 822, 830 (E.D. Pa. 1997). Without it, an order to compel arbitration would be nothing more than "a hollow formality." *Id.* Recognizing this, courts staying parallel proceedings in arbitration cases have determined such stays fall within the statutory exceptions for orders "necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. §2283.

Uber does not meaningfully distinguish the numerous cases identified by Petitioners. It spends considerable time in its brief (at 18) recounting some general observations about the origin of the "necessary in aid of jurisdiction" exception, relying almost exclusively on *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091 (9th Cir. 2008). But *Negrete* is not a case involving a motion to compel arbitration, and thus does nothing to refute other courts' reliance on that exception in the actual context presented here. When a court compels arbitration, parallel proceedings attacking the administration of that arbitration necessarily undermine or nullify the arbitration. The problem in such cases is not merely the *possibility* that the state courts might reach a different decision than the federal court, but the fact that the state court proceeding itself interferes with the contracted-for arbitration. As the Supreme Court has observed, "[c]ontracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate." *Southland Corp. v. Keating*, 465 U.S. 1, 7 (1984).

Petitioners also noted in their opening brief that several courts have found that a stay is appropriate to "protect or effectuate its judgment"—i.e., the order to arbitrate. Mot. 19 (collecting cases). Uber first feigns ignorance, arguing (at 19) that here, "no federal court has decided anything." Well, no, not yet—but if this Court issues the order compelling arbitration that Petitioners seek, the Court is authorized to enjoin state court proceedings to protect that order.

1    Even then, Uber says, an injunction is prohibited because its suit against AAA is separate

2    and distinct from this dispute. This is the same illusory distinction that Uber relies on throughout

3    its opposition—ignoring that its claims against AAA are claims challenging the administration of

4    Petitioners' arbitrations, and that AAA itself has identified Petitioners as the real party in interest.

5    *See supra* Part B(1), at 5. Without that distinction, Uber has nothing to say to distinguish the bevy

6    of cases Petitioners have identified supporting an injunction against state court proceedings in

7    these circumstances. *See, e.g.*, *CarMax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d

8    1078, 1127 (C.D. Cal. 2015); *Circuit City Stores, Inc. v. Najd,* 294 F.3d 1104, 1109 (9th Cir.

9    2002);[4] *Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 399 (5th Cir. 2006); *Insurance Newsnet.com,*

10   *Inc. v. Pardine*, 2011 WL 3423081, *4 (M.D. Pa. Aug. 4, 2011).[5] Nor is Uber's appeal to the

11   court's discretion to deny a stay supported by any compelling reason (apart from its desire to

12   pursue its claims in New York to the end while Petitioners are forced to wait).

13        **C. Abstention is not appropriate.**

14        Again, as Petitioner anticipated (Mot. 22-24), Uber asks this Court to abstain from deciding

15   the motion to compel until the New York court decisions are final. *See* Opp. 21-22. The parties

16   agree about the basic standards for abstention, and Uber does not dispute that numerous cases

17   (including the Supreme Court in *Moses H. Cone*) have found that the "exceptional circumstances"

18   required to support abstention are not present when an arbitrable dispute is proceeding in state

19   court; in such a case, "the balance [is] heavily weighted in favor of the exercise of jurisdiction."

20   460 U.S at 16, 19; *see also Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800,

21   813 (1976) (recognizing an "extraordinary and narrow exception" from the presumption that

22   federal courts will exercise their jurisdiction).

23

24   [4] Uber implies (at 19 n.2) that *Circuit City* did not actually affirm an order staying a state court
     proceeding, but the case indicates that the district court granted the relief Petitioners sought, and

25   the *CarMax* court understood *Circuit City* to be approving of an injunction against state court
     proceedings. *See CarMax*, 94 F. Supp. 3d at 1127.

26   [5] Uber misleadingly suggests (at 19) that *Geographic Expeditions Inc. v. Est. of Jason Lhotka,*
     2010 WL 3516116 (N.D. Cal. Sept. 8, 2010), categorically rejected the availability of such relief

27   under the Anti-Injunction Act. Not so. That court merely held that relief was not appropriate in
     that case, where the party filing a federal petition to compel arbitration had already moved to

28   compel in state court and lost that motion on appeal. *See id.* *3-*4.

Nor does Uber really mount any challenge to the various factors analyzed by Petitioners in their brief, the weight of which point firmly in favor of exercising jurisdiction and deciding the motion to compel. *See* Mot. 23-24 (analyzing each of the relevant *Moses H. Cone* factors). Instead, Uber simply argues that it would be more convenient to just wait and see what happens in New York. Opp. 21 (arguing that "it makes sense to allow the New York court to complete its work").

But the current appeal will surely not resolve Uber's lawsuit over the invoice anytime soon. To begin, there is no deadline on the New York appellate court's issuance of a decision. And even when that decision comes, it will not be the end of state court proceedings. In the unlikely event that Uber prevails in its appeal (including any further appeal from AAA), it will have obtained a further stay of payment (and its obligation to arbitrate Petitioners' cases) but substantial work would be left to do on remand as the court determines—presumably after discovery and a trial— what might actually constitute a "reasonable" fee for administering these arbitrations (as well as what the actual intent of AAA and Uber allegedly was, whether AAA violated an implied duty of "good faith," and so on). That's why Uber's appellate brief requests a remand for further proceedings in trial court. *See* Edelstein Decl., Ex. 9 at 58; *see also id.* at 15 (requesting the appellate court enter "preliminary injunctive relief pending the adjudication of Uber's declaratory judgment claims"). Of course, if Uber loses its current appeal, it will no doubt seek to exercise its right of further appeal to the New York Court of Appeals, which could easily take more than a year. And even then, this all is just an interlocutory appeal; there is a motion to dismiss the underlying claim pending in the trial court, and that motion itself could then be the subject of even further appeals.[6]

And even if the New York case were decided soon, it still would not favor *Colorado River* abstention. The amount of progress made in the state court action is but one of the factors considered by courts, *see Moses H. Cone*, 460 U.S. at 23, and Uber does not dispute that courts

---

[6] Even if the resolution of the appeal against Uber—whenever that may come—convinces Uber to pay the fees, it would still "frustrate[]the statutory policy of rapid and unobstructed enforcement of arbitration agreements" to have pending arguments on arbitral issues in state court at the same time arbitrators are hearing Petitioners' cases. *Moses H. Cone*, 460 U.S. at 23.

have granted relief even when the state court cases have been pending for months. *See, e.g.*, *Watermark Harvard Square*, 2018 WL 1166707, at *5; *A.L. Williams & Assocs., Inc. v. McMahon*, 697 F. Supp. 488 (N.D. Ga. 1988). This Court should do the same, so that Petitioners' arbitrations may proceed consistent with Congress's strong pro-arbitration preference embodied in the FAA.

**D.  The merits of the AAA fees are not for this Court to decide.**

Uber devotes substantial space in its memorandum (at 22-25) to the merits of its claims about AAA's administration of the fees in Petitioners cases. But this Court can't adjudicate those questions because they are properly raised in the arbitral forum. It is bedrock law that "[w]hen faced with a petition to compel arbitration, a court's role is limited to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." *International Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Aloha Airlines, Inc.*, 790 F.2d 727, 731 (9th Cir. 1986). "The court neither resolves the underlying factual controversy nor weighs the relative merits of the parties' claims." *Id.* Here, Uber drafted the delegation clause that sends all questions about the formation of the arbitration agreement, its application, and the interpretation of AAA's rules and fee schedule to the arbitrator. *See supra* Part B(1), at 5-6. There is just no basis to address the merits of Uber's claims—although they are completely meritless, as the New York trial court and AAA have each explained. *See* First Weir Decl., Ex. G; Second Weir Decl., Ex. D.

**E.  Uber does not and cannot contest the existence of arbitration agreements for Petitioners' accounts.**

Twenty pages into its opposition, Uber complains that Petitioners have not submitted "individualized evidence" of their arbitration agreements with Uber. Opp. 20. Uber suggests that this is necessary because some unquantified "number" of Petitioners may not have a claim on the merits—citing untested and self-serving assertions about individuals who are *not* before the Court. *Id.* 20-21. Uber further contends that every Petitioner must "substantiate" their allegations in federal court before obtaining an order to arbitrate. *Id.* 21. Uber is wrong on all these counts. Uber does not actually contest the existence of any Petitioner's arbitration agreements, its suppositions

about frivolous claims are self-refuting, and its invitation to adjudicate the merits of these cases flies in the face of the FAA's goal of protection the parties' choice to arbitrate and the actual holdings of the cases it cites.

To begin, Uber does not—and cannot—deny the existence of arbitration agreements between it and Petitioners. Uber ignores the primary evidence that Petitioners submitted on this point: that Uber itself paid the filing fees—and thus consented to the initiation of arbitration proceedings—*for every single Petitioner*. *See* Mot. 15, McCarthy Decl., Exs. C-D; *see also* Opp. 8 ("Uber has paid filing fees in full for all 7,271 Petitioners."). And elsewhere in its brief, Uber simpers when it assures this Court that it is "not refusing to arbitrate" with Petitioners. Opp. 8, 9. In light of its agreement to proceed in arbitration before AAA, Uber cannot now reasonably disclaim the existence of any agreement to arbitrate.

Uber knows as much—which is why it conspicuously avoids actually contesting the existence of any arbitration agreement in this case. Indeed, Uber already has been provided with the name, a phone number, and an email address for every single Petitioner. Gordon Decl. (Doc. 24) at 3 ¶7. Uber can quickly determine which Petitioners are not party to an arbitration clause. If Uber really believed that Petitioners lacked accounts and thus cannot bring a §4 petition, it no doubt would have said so. Indeed, it would have declined to pay the initiation fees for those arbitrations in the first instance.

What Uber provides instead is a declaration from one of its employees, describing a cursory analysis of 500 *other* claimants. To the extent that any inference can be drawn from that analysis, it supports Petitioners, not Uber. After all, of the 500 people described in the declaration, Uber confirmed that 488 of them—98 percent—had accounts with Uber. And this number would be even higher if Uber would agree to search by street address and other potential information to help identify additional accounts. Uber has resisted doing so to date in the arbitration proceedings. *See* Second Weir Decl. ¶¶11-12.

Even if Uber could raise a challenge to a handful of the Petitioners here, it would not matter. The relief requested by each of the Petitioners is the same, and an order as to one would benefit all. Assuming Uber is sincere in its expressed desire (at 27) to avoid "impos[ing] paperwork

burdens on Petitioners' counsel" and the Court, it is easy to provide examples among the Petitioners confirming that they have accounts with Uber, placed orders in 2020, and thus are parties to Uber's terms and its arbitration clause. *See* Second Weir Decl. ¶¶5-6, Exs. B & C. Again, this simply confirms what Uber's payment of the initiation fees already established: that Petitioners are parties to arbitration proceedings that Uber is obstructing, and they are entitled to an order under §4 of the FAA.

Finally, this Court should resist Uber's Hail Mary invitation (at 26) to wade into the merits of Petitioners' claims under 42 U.S.C. §1981. Uber offers no authority for its assertion that a motion to compel under the FAA requires an evidentiary submission proving individual damages at the pleading stage. *See, e.g.*, *Aloha Airlines, Inc.*, 790 F.2d at 731 (noting that courts should not address the underlying merits of arbitrable claims). The lone case Uber cites involving an FAA petition analyzed only whether the *pleadings* were "wholly frivolous"—and explicitly noted that "even if the *allegations* would be insufficient to survive a motion to dismiss for failure to state a claim, they lend Plaintiffs' price-fixing claims enough merit to survive [the] jurisdictional challenge." *Jolly v. Intuit Inc.*, 485 F. Supp. 3d 1191, 1201 (N.D. Cal. 2020) (emphasis added).[7] Unlike *Jolly*, Uber here is not contending that Petitioners' §1981 theory is frivolous. Nor could it; arbitrators in other proceedings have already found for claimants and against Uber on that theory. *See* Second Weir Decl. ¶8. And because *Jolly* makes clear that an assertion that fails to satisfy Rule 12(b)(6) can nonetheless avoid a jurisdictional challenge, it cannot possibly be read to require evidentiary proof of individualized damages, which of course are not required even at the motion to dismiss stage. The actual damages Petitioners have incurred is a question on the merits, for decision by the arbitrator, not this Court.

---

[7] None of the other authorities cited by Uber support its invented evidentiary-showing requirement; all analyzed the pleadings on their face. *See, e.g.*, *Bell v. Hood*, 327 U.S. 678, 683–84 (1946) (rejecting the alleged frivolousness of an assertion of jurisdiction by noting that "*the complaint* does in fact raise serious questions, both of law and fact, which the district court can decide only after it has assumed jurisdiction over the controversy" (emphasis added)); *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 979 (9th Cir 2012) (noting that jurisdictional dismissals in actions predicated on federal questions are "exceptional" and upholding jurisdiction over claim where plaintiff was "*asserting* a colorable claim").

And even if such a requirement did exist, Petitioners would satisfy it here. In addition to their damages claims, each arbitration demand includes a request for injunctive relief under §1981. *See* Second Weir Decl. at ¶4 & Ex. A. Federal law authorizes injunctive relief even in cases where the Plaintiff did not suffer *any* damages.[8] *Miller v. Fairchild Industries, Inc*., 797 F.2d 727, 733 (9th Cir. 1986); *Bras v. California Public Utilities Com'n*, 59 F.3d 869, 872 (9th Cir. 1995) (reversing dismissal of §1981 claims for injunctive and declaratory relief only). Petitioners thus in no way can be denied their right to arbitrate based on the "wholly frivolous" standard applied in *Jolly*.

### F.   Relief under Cal. Civ. Pro. §§1281.98 and 1281.99 is warranted.

#### 1.   The California statutes cover this precise scenario.

In their opening brief, Petitioners explained how Uber's refusal to pay the invoice for case management fees triggers Cal. Civ. Pro. §1281.98. Petitioners explained how that provision applies to a "consumer arbitration" (like this one) where "the drafting party" is required to "pay certain fees and costs during the pendency of an arbitration proceeding" (like the AAA invoice), and authorizes Petitioners to "[p]etition the court for an order compelling the drafting party to pay all arbitration fees that the drafting party is obligated to pay under the arbitration agreement or the rules of the arbitration company." *Id.* §1281.98(b)(3); Mot. 26-27. Petitioners noted that this provision was specifically enacted with Uber in mind; the Legislature specifically cited the company's past refusal to arbitrate under term it drafted as the motivating factor for the legislation. Mot. 27.

Despite this being the *precise* scenario that the Legislature was concerned about in enacting §1281.98, Uber argues (at 27-28) that the provision does not apply to its conduct. Neither of Uber's arguments is correct.

---

[8] Although Uber has suspended the discount program, it retains the ability to restart the Promotion and has not agreed to refrain from reintroducing it. To the contrary, it still tracks "Black Owned Businesses" in its app, it has vigorously defended its race-based discount and, in response to the filing of these suits, its Chief Legal Officer publicly stated that he was "[p]roud Uber is supporting black-owned restaurants that have suffered disproportionately because of COVID. It's a moral issue; not a political one." *See* Tony West, Twitter (Oct. 30, 2020), https://twitter.com/tonywest/status/1322237848330903554.

1    Uber first says that §1281.98 cannot apply because the interim relief it has obtained in New

2  York means there is no longer any "due date." That is not accurate; on its face the interim relief

3  extends the time for compliance, but does not alter the invoice or due date itself., First Weir Decl.,

4  Ex. H. More importantly—as Uber recognizes (at 28)—the New York order does not and cannot

5  bind Petitioners, who were excluded from participating in that litigation by *Uber's* successful

6  opposition. *See* Mot. 16 (citing *Taylor v. Sturgell*, 553 U.S. 880, 892-93 (2008)). Nor does the

7  New York order purport to actually determine anyone's rights under California law; Uber has not

8  asked the New York court to declare the meaning of §1281.98. *See* Edelstein Decl. (Doc. 23), Ex.

9  9.[9] Although the order may temporarily require AAA to take certain actions with respect to these

10  files, it neither alters the face of the pending invoice, nor declares the effect of §1281.98. And the

11  New York interim order does not in any way *prohibit* Uber from paying the invoice.

12    In any event, the due dates set by arbitrators are not amenable to modification by even the

13  arbitrator itself, let alone a New York court. The entire point of the California law was to provide

14  Petitioners "with procedural options and remedies … when a company stalls or obstructs the

15  arbitration proceeding by refusing to pay the required fees." Senate. Judiciary Comm. Hr'g on SB

16  707 at 6 (Cal. April 11, 2019). To that end, the Legislature imposed a deadline that, in its view,

17  was "strict yet reasonable" to prevent drafters of arbitration agreements from delaying arbitration.

18  Assemb. Judiciary Comm. Hr'g on SB 707 at 9 (Cal. June 18, 2019). Thus, the district court in

19  *Dekker* determined that if an "arbitrator could postpone time and again, delaying the 30-day grace

20  period for as long as the arbitrator wished… [it] would subvert the whole point of the new law."

21  *Dekker v. Vivint Solar, Inc*., 479 F. Supp. 3d 834, 839 (N.D. Cal. 2020).[10]

22

23

24  [9] Indeed, Uber appears to have deliberately gone to New York to avoid a decision from this state's courts on the meaning of California law. Why else would a California-based company challenging invoices for arbitrations taking place in California file on the other side of the country?

25  [10] As Uber notes, *Dekker* was reversed on other grounds—specifically, that the delegation clause at issue required an initial determination from the arbitrator as to whether the fees were paid on time. *Dekker v. Vivint Solar, Inc*., 2021 WL 4958856, at *1 (9th Cir. 2021). As Petitioners noted, and as Uber does not contest, the AAA has already determined that the failure to pay by the deadline constituted default under §1281.98. *See* Mot. 26-27 & n.2.

26

27

28

Needless to say, if arbitrators cannot extend the statutory deadlines of §1281.98, then courts cannot either—even if the ruling may temporarily forestall AAA's own contract remedies against Uber. And indeed, a loophole that allows a drafting party to avoid the consequences of §1281.98 and its own agreements by running to any court in the country would render §1281.98 toothless. Uber of course had the right to challenge the fees before the arbitral body itself, and could seek vacatur after each arbitration. But California law is clear that §1281.98 imposes a deadline premised off receipt of the invoice from AAA, and that deadline has passed.

Nor does this case "run[] roughshod over federalism." Opp. 28. The FAA and the Anti-Injunction Act authorize stays of parallel state proceedings—precisely to prevent the kind of end-around Uber has attempted here. And once those proceedings are stayed, as they should be, there is no longer any conflict between the New York action and this case.

Uber's second argument (at 28) is that it does not, in fact, owe the amount due on the invoice because it finds those fees unreasonable. All agree that Uber is trying to renege on the fee structure that it expressly adopted into its arbitration agreement and forced upon consumers. But §1281.98's reference to "the fees or costs required to continue the arbitration proceeding" necessarily refers to the fees or costs determined by AAA (and adopted by Uber in its own agreement) and set forth in the invoice. *See, e.g.*, *Daniels v. Securitas Security Services USA, Inc.*, 2021 WL 2322938, at *2 (C.D. Cal. 2021) (noting that defendant "failed to timely pay the $1,750 filing fee that was required by JAMS to commence arbitration" and thus was liable under §1281.97); *Agerkop v. Sisyphian LLC*, 2021 WL 1940456, at *3 (C.D. Cal. 2021) (finding liability under §1281.97 where defendants "did not pay the $12,765 balance in the invoices issued" by the arbitrator). It of course would be absurd to assume the Legislature intended the "fees and costs" to be only those fees or costs the drafting party prefers to pay at the time the invoice is issued. The statute is intended to prevent parties from delaying the continuation of the proceedings, which means they must pay the fees the arbitrator determines are due. Again, Uber may have remedies in the arbitration and afterward, but its attempt to litigate and delay Petitioners' cases from proceeding does not excuse it from the requirements of §1281.98.

1

2
### 2.   The California statutes are substantive, not procedural, and apply in federal court.

3
Uber's final argument is that §1281.98 applies in California state court only and not in this

4
proceeding. None of its reasons are correct.

5
First, Uber contends that these statutes are procedural, not substantive, and thus do not

6
apply in federal court under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Uber's argument (at

7
29) hinges entirely on the fact that one part of one subsection of §1281.97 references the fact that

8
nonpayment waives a party's right to arbitrate under California's Arbitration Act. But §1281.97

9
provides a variety of remedies, and none of the other remedies suggest its application is limited to

10
state courts. Indeed, the statute repeatedly references actions "in a court of appropriate

11
jurisdiction," rather than limit its application to state court (which the Legislature easily could have

12
done). More importantly, a number of federal courts have already applied §1281.97 in federal court

13
proceedings. *See, e.g.*, *Daniels*, 2021 WL 2322938, at *2; *Agerkop*, 2021 WL 1940456, at *3;

14
*Hagan v. Park Miller LLC*, 2021 WL 1688347, at *1 (N.D. Cal. 2021); *Tapia v. Braiform*

15
*Enterprises, Inc*., 2020 WL 5167740, at *2 (C.D. Cal. 2020).[11]

16
Moreover—as Uber concedes—Judge Alsup in *Dekker* specifically considered and

17
rejected Uber's argument that §1281.97 is procedural and not substantive. As *Dekker* noted, "[t]he

18
statute defines a drafting party's failure to pay arbitration fees 'within 30 days after the due date'

19
as a 'material breach' of the contract." 479 F. Supp. 3d at 837. Thus, §1281.97 "on its face,

20
modifies substantive state contract law." *Id.* The same is true for §1281.98.

21
Uber's final pivot is to claim that §1281.98 cannot apply because the Court lacks

22
supplemental jurisdiction over Petitioners' state law claim. Its theory is convoluted, reasoning

23
backward from *Vaden* that because the basis for jurisdiction is the §1981 claim, supplemental

24
jurisdiction cannot arise for Uber's violation of its Terms of Service. But the supplemental

25
jurisdiction statute authorizes the court to exercise jurisdiction over any additional claims, so long

26

27
[11] *Agerkop* and *Tapia* also applied the remedial provisions of §1281.99 applied in federal court,
thus rejecting Uber's separate argument (at 23) that the sanctions allowed for in that section do not

28
apply in federal court.

as "they form part of the same case or controversy." 28 U.S.C. §1367(a). The Ninth Circuit has described the relationship as "such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." *Trs. of Constr. Indus. and Laborers Health and Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003) (quotations omitted). That easily encompasses this dispute—which is between Uber and Petitioners over the terms of service that both provided the platform through which the Uber charged Petitioners illegal delivery fees and prescribed their right to adjudicate those claims. Other courts have broadly applied the language of §1367(a) to encompass contract and tort claims, for example. *See, e.g., Mendoza v. Amalgamated Transit Union International,* 2017 WL 5045646, at *5 (D. Nev. 2017). Indeed, Uber has asserted counterclaims for violation of the arbitration provisions in other pending arbitrations raising the same claims. Second Weir Decl. ¶7. Since Uber has concluded that it is appropriate to resolve its arbitration-provision disputes in the same arbitrations as these civil rights claims, it can hardly take the opposite position here when consumers seek to vindicate their own arbitration rights.

## CONCLUSION

For the reasons stated, Petitioners respectfully request that this Court enter the relief requested in their motion, including an order compelling Uber to arbitrate its claims, pay the required fees, withdraw its New York lawsuit, and such other and further relief as the Court deems just and proper.

1

2

Dated: February 14, 2022

Respectfully submitted,

3

 */s/ Bryan Weir*

4

Bryan Weir (#310964)
bryan@consovoymccarthy.com

5

Thomas R. McCarthy

6

(*admitted pro hac vice*)
tom@consovoymccarthy.com

7

CONSOVOY MCCARTHY PLLC

8

1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423

9

10

Patrick Strawbridge
(*admitted pro hac vice*)
patrick@consovoymccarthy.com

11

CONSOVOY MCCARTHY PLLC

12

Ten Post Office Square
8th Floor South PMB #706

13

Boston, Massachusetts 02109
(617) 227-0548

14

15

Bradley A. Benbrook (#177786)
brad@benbrooklawgroup.com

16

BENBROOK LAW GROUP PC

17

701 University Avenue, Suite 106
Sacramento, CA 95825
(916) 447-4900

18

19

*Counsel for Petitioners*

20

21

22

23

24

25

26

27

28